THE STATE, EX REL. BROWN, ATTY.
GEN., APPELLANT, *v.* CHASE FOUNDRY
& MANUFACTURING COMPANY,
APPELLEE.

(No. 82AP-273—Decided November 16, 1982.)

*Mr. William J. Brown,* attorney general, *Mr. Robert J. Styduhar* and *Mr. Jack Van Kley,* for appellant.

*Messrs. Brownfield, Bowen & Bally, Mr. C. William Brownfield* and *Mr. William H. Arnold,* for appellee.

GUERNSEY, J. This is an appeal by the state of Ohio from a judgment of the Court of Common Pleas of Franklin County, in an action brought by the Attorney General, for prohibitory and mandatory injunctive relief against the defendant, Chase Foundry and Manufacturing Company. The parties have throughout referred to themselves as plaintiff and defendant, rather than relator and respondent, and for convenience we will do likewise.

The complaint filed on September 1, 1979, alleges, and the defendant admits, that it is engaged in the business of manufacturing at its facility in Columbus, Ohio, operating a melting furnace called a cupola which is used to produce gray iron castings; that, while in operation, the cupola emits smoke; that, on August 7, 1978, the Director of Environmental Protection issued certain findings and orders, a copy of which is attached to the complaint as Exhibit A, which findings and orders speak for themselves; that the defendant has not replaced its cupola with an electric induction furnace, or replaced it on the schedule as set forth in Paragraph 2 of the orders, and in Exhibit A; and that defendant has not submitted written progress reports to the Environmental Protection Agency (hereinafter

referred to as "OEPA"), as referred to in Paragraph 4 of the orders in Exhibit A.

The complaint also alleges, but the defendant does not admit, that, while in operation, the defendant's cupola emits "air contaminants," as that term is defined in R.C. 3704.01(A), including "particulate matter" as that term is defined in Ohio Adm. Code 3745-17-01(J) (now 3745-17-01[B][10]); that the findings and orders included in Exhibit A were issued pursuant to R.C. 3704.03(S); that (as to Count 1) defendant has violated Order No. 1 by failing to either install pollution control equipment on the cupola, or to replace the cupola with an electric induction furnace; that (as to Count 2) defendant has violated the requirements of Order No. 2 by failing to meet the scheduled achievement deadlines set forth in the compliance schedule; that (as to Count 3) defendant has violated the requirements of Order No. 4 by failing to submit written progress reports to the OEPA; that (as to Count 4) the operation by the defendant of its cupola causes the emission of particulate matter as defined in Ohio Adm. Code 3745-17-01(J), in excess of that allowed by Ohio Adm. Code 3745-17-11; that (as to Count 5) the operation of the cupola causes the emission of visible air contaminants as defined in R.C. 3704.01 (A) in excess of that allowed by Ohio Adm. Code 3745-17-07; and that (as to Count 6) defendant's cupola is a source of air contaminants operating without a permit to operate in violation of Ohio Adm. Code 3745-35-02.

The complaint prayed (a) that defendant be enjoined from operating its cupola until such time as a permit to operate has been obtained; (b) that the defendant be ordered to comply as soon as possible with all terms and conditions of Orders Nos. 1, 2 and 4, contained in Exhibit A; (c) that defendant be enjoined from violating Ohio Adm. Code 3745-17-07; and (d) that defendant be enjoined from violating Ohio Adm. Code 3745-17-11.

The trial court, on March 16, 1982, entered a judgment dismissing the action pursuant to its granting defendant's motion for summary judgment and denying plaintiff's cross-motion for summary judgment for "the reasons stated in the written Decision rendered * * * on March 3, 1982." That decision treats only the validity under R.C. 3704.03(S) of the findings and orders set forth in Exhibit A to the complaint and determines that they are void because the Director of Environmental Protection "failed to take into account the economic reasonableness of said findings and orders."

The plaintiff makes the following assignments of error:

"1. The court erred in granting judgment to defendant by excusing defendant's unlawful conduct of operating an air contaminant source without an Ohio EPA permit to operate.

"2. The court erred in granting judgment to the defendant by excusing defendant's violations of Ohio EPA Administrative orders in the following respects:

"A. The court lacked jurisdiction to examine the validity of the administrative orders;

"B. The court was barred by *res judicata* from examining the validity of the administrative orders;

"C. The court was barred from examining the validity of the administrative orders by the defendant's express waiver of its right to collaterally attack the orders;

"D. In holding the administrative orders invalid, the court applied an erroneous standard of law, *i.e.*, that the Ohio EPA, prior to issuance of an order, must examine the wealth of the recipient of the order; and

"E. Assuming the trial court applied the correct standard of law, the granting of summary judgment that the administrative orders were invalid was erroneous due to the presence of issues of material fact."

We shall consider these assignments of error in reverse order.

The second assignment of error pertains to the trial court's action in finding the administrative orders made by the Director of Environmental Protection on August 7, 1978 void, pursuant to defendant's motion for summary judgment.

It should be observed initially that the cause before the trial court does not readily lend itself to review on the basis of the arguments because of the condition of the record from the standpoint of summary judgment proceedings. Neither the motion of plaintiff nor the cross-motion of defendant for summary judgment details the evidentiary documentation relied upon by each movant in support of his, or its, respective motion. The principal affidavit of the officer of defendant is not made specifically on personal knowledge, includes allegations of fact and argument not admissible in evidence, and does not show that the affiant is competent to testify to all the matters stated therein. Documents relied upon by the parties and attached as exhibits to various memoranda are not made exhibits to affidavits and are neither sworn nor certified. Four depositions filed in the cause remain sealed and were obviously not considered by the trial court. The originals of two other depositions with exhibits thereto are missing from the file. Finally, the judgment of the trial court, and its decision, does not disclose the evidentiary documentation either before the court on the motions, or relied upon by the court in arriving at its decision.

Nevertheless, there are controlling and undisputed facts which enable us to arrive at dispositive determinations as a matter of law.

Basic to Ohio's implementation of the federal Clean Air Act by legislation enacted and regulations adopted prior to August 7, 1978, and effective at the time of the rendering by the director of the orders in question, is the concept that no person may permit the operation of any air contaminant source, air contaminants (including smoke), being defined by R.C. 3704.01(A), without applying for and obtaining a permit to operate from the OEPA. R.C. 3704.03(G) and Ohio Adm. Code 3745-35-02. As the defendant has admitted that its cupola, when operating, emits smoke, there is no question that it is an air contaminant source and that its continued operation was, and is, subject to the possession of a permit. An exception to the permit requirements, when the operator cannot make a satisfactory showing to the director that its equipment is being operated in compliance with applicable emission standards and other regulations, and when the air contaminant source emits any air pollutant in violation of any applicable air pollution control law, is the variance prescribed by R.C. 3704.03(H) and Ohio Adm. Code 3745-35-03, which may be issued by the director in compliance with such sections. In effect, a permit, if the operator can show compliance with clean air standards, is issued substantially as a matter of right; whereas, a variance, if the operator can show as provided by the statutes and regulations, either excusable hardship or an ability in time to comply with clean air standards, is granted substantially as a matter of grace or privilege in the exercise of a sound discretion by the director.

Here, the findings and orders (Exhibit A to the complaint) constituted yet another alternative to a permit, being executed substantially in the form of a variance but issued, instead, under the provisions of R.C. 3704.03(S) and (I) and R.C. 3704.031, as well as in accordance with Section 113(d) of the Clean Air Act, as amended, Section 7413(d), Title 42, U.S. Code. Under such authority, the orders permitted delayed compliance beyond the termination date in defendant's variance which had previously expired. The orders specified that final compliance with state and federal statutes and regulations shall be achieved by July 1, 1979. Admittedly, the defendant did

not achieve final compliance by that date and it appears in the record and was admitted at oral argument on appeal that the defendant has not been granted a permit to operate its cupola. It also appears that the defendant does not possess a current variance or any other order allowing current operation of the cupola.

Thus, under either the specific terms of the orders of August 7, 1978, or by operation of the provisions of Section 113(d) of the Clean Air Act, Section 7413(d), Title 42, U.S. Code, then in effect, which prohibited time extensions for compliance beyond July 1, 1979, the operation of the orders respecting both the privilege of temporarily continuing noncomplying emissions as well as the obligations of compliance expired and terminated on July 1, 1979. After that date, any substantive or procedural issues pertaining to the issuance of such orders and their validity, with respect to the relief sought in the first three counts of the complaint, became moot. Cf. *Cleveland Elec. Illum. Co.* v. *Williams* (1977), 55 Ohio App. 2d 272, 282 [9 O.O.3d 409].

Although there is respectable authority that the orders under consideration were not void *ab initio (State, ex rel. Stough,* v. *Bd. of Edn.* [1977], 50 Ohio St. 2d 47 [4 O.O.3d 116] ), and that the principles of *res judicata* apply preventing the trial court from reviewing whether or not the Director of Environmental Protection properly considered the economic factors involved *(State, ex rel. Stough,* v. *Bd. of Edn., supra; Cincinnati, ex rel. Crotty,* v. *Cincinnati* [1977], 50 Ohio St. 2d 27 [4 O.O.3d 83]; *State, ex rel. Williams,* v. *Bozarth* [1978], 55 Ohio St. 2d 34 [9 O.O.3d 19]; and *Warren Molded Plastics, Inc.* v. *Williams* [1978], 56 Ohio St. 2d 352 [10 O.O.3d 484]), these issues, as well as all the other issues raised by the plaintiff under the second assignment of error, were moot in the determination of whether or not the plaintiff was entitled to an injunction against the defendant under the first three counts of the complaint.

As to these counts, plaintiff's prayer was that the defendant and its agents be ordered "to comply with all terms and conditions of Order numbers one (1), two (2), and four (4) * * * as soon as possible." However, the orders had terminated and the Director of Environmental Protection has done nothing to permit noncompliance or to require compliance after July 1, 1979. For the trial court to order compliance after July 1, 1979, would, in effect, be a substitution of that court's judgment and discretion for that of the director, would be the making of an order not authorized by law, and would not be the enforcement of the orders of August 7, 1978, which terminated on July 1, 1979. After that date, any injunctive relief is not available under the orders of August 7, 1978, or by reason of the noncompliance with such orders, but is available, if at all, by reason of continued violations of the clean-air standards and the statutes and regulations applicable when the operator possesses no permit, no variance, and no other order allowing noncomplying emissions.

Accordingly, the trial court committed technical error in refusing an injunction and dismissing the entire complaint on the ground that the orders under consideration were void. However, for the reasons heretofore stated, the plaintiff was not entitled to an injunction for any supposed violation of the August 7, 1978 orders and, therefore, not entitled to injunctive relief under any of the first three counts of the complaint.

We return then to a consideration of the first assignment of error.

As we have already seen, it is undisputed that the defendant, in the operation of its cupola, was, at the time the complaint was filed and still is emitting an air contaminant, smoke, from an air contaminant source, its cupola, without a permit in violation of R.C. 3704.05 and Ohio Adm. Code, Section 3745-35-02. As we

have also seen and determined at the time of, and since the time of, filing the complaint, the defendant has not possessed a currently applicable variance or any other order allowing the emission of such air contaminant in the absence of a permit.

This situation brought into force and effect the enforcement provisions of R.C. 3704.06 requiring the Attorney General, upon request of the director, to bring an action for an injunction (or any other appropriate proceedings) against the defendant.

At the time the complaint was filed, R.C. 3704.06 then prescribed:

"* * * The court shall have jurisdiction to grant injunctive relief or enter such other judgment, and orders enforcing such judgment, as the public interest and equities of the case require."

The defendant claims that the phrase "as the public interest and equities of the case require," is applicable to and qualifies the phrase, "grant injunctive relief," and that, before an injunction is granted, the trial court must balance the public interest and equities against the interest and equities favorable to the defendant.

It is also arguable that the last phrase of the sentence is applicable to and qualifies only the words "or enter such other judgment, and orders enforcing such judgment."

However, effective December 19, 1980, while this action was pending and before either party had moved for summary judgment, the General Assembly amended the quoted sentence of R.C. 3704.06 dealing with the jurisdiction of the court to read:

"(B) * * * The court shall have jurisdiction to grant prohibitory and mandatory injunctive relief and to require payment of a civil penalty upon the showing that such person has violated Chapter 3704. of the Revised Code or regulations adopted thereunder."

The amending act, Am. Sub. S. B. No. 258, did not prescribe that the amendment would be applicable to pending proceedings, nor did it prescribe otherwise.

In our opinion, the quoted portion of the amendment to R.C. 3704.06 is of a remedial or procedural nature and not substantive. In *Kilbreath* v. *Rudy* (1968), 16 Ohio St. 2d 70 [45 O.O.2d 370], the Supreme Court held in the second paragraph of the syllabus:

"Laws of a remedial nature providing rules of practice, courses of procedure, or methods of review are applicable to any proceedings conducted after the adoption of such laws (Paragraph one of the syllabus of *State, ex rel. Holdridge,* v. *Indus. Comm.,* 11 Ohio St. 2d 175 [40 O.O.2d 162], approved and followed. *Cincinnati, Hamilton & Dayton Rd. Co.* v. *Hedges,* 63 Ohio St. 339, criticized.)"

Although this rule of law was applied in *Kilbreath, supra,* to a situation where a cause of action had accrued but the complaint had not been filed, its application was extended by the Supreme Court in *Denicola* v. *Providence Hospital* (1979), 57 Ohio St. 2d 115 [11 O.O.3d 290], to situations, as here, where the amendment became effective after the complaint had been filed, but before trial. The amendment here was thus applicable prospectively to the trial court's determination of the summary judgment motion of the plaintiff as to whether an injunction should be granted against the defendant under Count 6 of the complaint alleging a continuing statutory violation. Accordingly, as determined in *Ackerman* v. *Tri-City Geriatric & Health Care, Inc.* (1978), 55 Ohio St. 2d 51, 56 [9 O.O.3d 62], when a statute grants a specific injunctive remedy to the state:

"* * * the party requesting the injunction 'need not aver and show, as under ordinary rules in equity, that great or irreparable injury is about to be done for which he has no adequate remedy at law * * *.' *Stephan* v. *Daniels* (1875), 27 Ohio St. 527, 536. (See, also, *State* v. *Alexander Brothers, Inc.* [1974], 43 Ohio App. 2d 154 [72 O.O.2d 362]; 29 Ohio

Jurisprudence 2d 176, Injunctions, Section 13; and 42 American Jurisprudence 2d 776, Injunctions, Section 38, for further support of the propositions that the traditional concepts for the issuance of equity injunctions do not apply in statutory injunction actions.)"

Justice William B. Brown additionally said in *Ackerman, supra,* at page 57 that:

"* * * R.C. 3721.08 was designed by the General Assembly to benefit society by proscribing behavior (the unlicensed operation of nursing homes) which the General Assembly has determined not to be in the public interest. It would, therefore, be redundant to require the Director of Health to show irreparable damage or lack of an adequate legal remedy once he has already proved that the conditions which the General Assembly has deemed worthy of injunctive relief exist. In addition, it would be inappropriate to balance the equities or require the Director of Health to do equity in an R.C. 3721.08 injunction action because R.C. 3721.08 injunctions and similar injunctions which authorize a governmental agent to sue to enjoin activities deemed harmful by the General Assembly are not designed primarily to do justice to the *parties* but to prevent harm to the general public. * * *"

In our opinion, the rules and observations thus set forth in *Ackerman, supra,* are equally applicable to the situation here, and the trial court committed error prejudicial to the appellant in dismissing the complaint without sustaining the appellant's cross-motion for summary judgment and rendering judgment granting the injunction sought by Count 6 of the complaint.

Although it is not fully apparent as to how same is part of the trial court record pertinent to this appeal, the defendant has referred, both in its brief and in its oral argument, to the fact that, during the pendency of the cause in the trial court, it applied for a variance to permit it to operate its cupola and that the application was returned without action. Suffice it to say, we do not deem this relevant to the issue of injunctive relief because neither the clean-air statutes nor the clean-air regulations provide that noncomplying emissions may be continued without order during the pendency of an application for a variance. If the defendant has been aggrieved by a lack of action on its application, its remedies lie other than in this cause.

For rendering summary judgment for the defendant dismissing the entire complaint for the wrong reasons, and for failing to render summary judgment for the plaintiff on the plaintiff's cross-motion for summary judgment for an injunction as prayed for under Count 6 of the complaint, both of which actions were prejudicial to the plaintiff, the assignments of errors are sustained for the reasons and to the extent indicated; and the judgment of the Court of Common Pleas of Franklin County must be reversed and the cause is remanded with instructions to enter final judgment for the plaintiff, granting an injunction on Count 6 of the complaint, and for the defendant on the first three counts of the complaint. As this leaves the fourth and fifth counts of the complaint, which did not involve the administrative orders and were not involved in the plaintiff's motion for summary judgment, unresolved, the cause is also remanded to the trial court for further proceedings on those counts. The assignments of error are sustained.

*Judgment reversed
and cause remanded with instructions.*

WHITESIDE, P.J., and NORRIS, J., concur.

GUERNSEY, J., of the Third Appellate District, sitting by assignment in the Tenth Appellate District.