The STATE, ex rel. FREEMAN et al., Appellees,

v.

PIERCE et al., Appellants.

[Cite as *State, ex rel. Freeman, v. Pierce* (1991), 61 Ohio App.3d 663.]

Court of Appeals of Ohio,
Montgomery County.

No. 12211.

Decided Feb. 8, 1991.

*James Greene III*, for appellees.

*John M. Hannah, Jr.*, for appellants.

---

FAIN, Presiding Judge.

Relator-appellee, Alvin Freeman, brought suit pursuant to R.C. 3719.10, to have the home of defendant-appellant, Mary Lee Pierce, declared a nuisance due to alleged drug activity that occurred on the premises. The trial court found that the house was a nuisance, and abated it pursuant to R.C. 3767.06 by closing it "against its use for any purpose" for one year. Pierce appeals, arguing as her sole assignment of error that the judgment was against the manifest weight of the evidence. We find that the trial court's judgment was supported by competent and credible evidence, and therefore we will affirm.

## I

Freeman is the chairperson of a private anti-crime organization called Concerned Christian Men ("CCM"). In the course of passing out literature on the northwestern side of Dayton, members of CCM allegedly learned from "several" residents that people frequently purchased marijuana from the house at 916 Bryn Mawr. This address is the sole residence of Pierce and her adult son, Jeffrey. Pierce's ex-husband, Jessie, Sr., was also named as a defendant, although he no longer resides in the house, and lost all legal interests in it following their divorce. Several of Pierce's other adult children (Danny, Jessie, Jr., Jimmy, and Diane) do not reside at 916 Bryn Mawr, but frequently visit, and allegedly have participated in drug sales on the premises.

CCM contacted the Special Investigation Bureau of the Dayton Police Department, and discovered that Pierce's house had been connected with drug-related activity on several occasions. Surveillance of the Pierce home was then conducted, and officers noticed an inordinate volume of traffic which stopped in front of the house and purchased unidentified packages. Detective Kenneth Beall testified that this activity was consistent with drug transactions. Pierce, as well as several defense witnesses, testified that the family was operating a restaurant out of her home, and the officers had only witnessed customers picking up rib dinners.

Freeman, who has standing under R.C. 3767.03 by virtue of being a citizen of the same county in which the Pierce home is situated, brought suit in the name of the state on April 14, 1989, claiming that the house was a nuisance *per se* under R.C. 3719.10. An *ex parte* temporary restraining order was issued on the same day prohibiting anyone from destroying evidence of the nuisance and authorizing an inventory of the house's contents pursuant to R.C. 3767.04. The inventory search was conducted on April 18, 1989, and uncovered approximately five pounds of marijuana located in the kitchen and basement.

On April 24 and 26, 1989, a hearing was held with both parties present. The parties agreed that this single hearing would suffice for the motions for both the preliminary and permanent injunctions. The trial court found that the Pierce home was a nuisance and issued a preliminary injunction on April 28, 1989, enjoining further felony drug violations on the premises. Freeman filed a memorandum in support of a permanent injunction on May 10, 1989, but Pierce did not reply or attempt to submit any further evidence. On June 8, 1989, the trial court issued a permanent injunction and ordered that the Pierce home be closed, and that it not be used by any person for any purpose for a period of one year, as authorized by R.C. 3767.06.

From this permanent injunction, Pierce now appeals. Execution of the "padlock order" has been stayed pending this appeal.

## II

As her sole assignment of error, Pierce contends that:

"The Common Pleas Court of Montgomery County erred in finding that defendant-appellant was guilty of maintaining a nuisance per se when it overruled defendant-appellant's motion for summary judgment and further erred in that the finding was against the manifest weight of the evidence and contrary to law."

Although the assignment of error specifically mentions the denial of her motion for summary judgment, nowhere in her brief does Pierce address this point. However, our holding on the manifest weight of the evidence implicitly decides this issue since Pierce could not have been granted a summary judgment without being entitled to judgment as a matter of law. Civ.R. 56(C). We also note that Pierce states in her conclusion that "R.C. 3767 [*sic*] is unconstitutional, in direct contravention of the First and Fourteenth Amendments." However, we can find no argument or support for this contention in her brief. "Errors not specifically pointed out in the record and separately argued by brief may be disregarded." App.R. 12(A). Therefore, we will address the only question that is properly before us: Whether the trial court's judgment was against the manifest weight of the evidence.

The parties disagree on who had the burden to prove what in the trial court. Freeman contends that he only needed to make a *prima facie* showing that felony drug violations occurred on the premises, and that the burden then shifted to Pierce to prove by a preponderance of the evidence that she reasonably lacked knowledge of these crimes. Pierce argues that the burden rested upon Freeman to prove beyond a reasonable doubt that she participated in a felony drug offense at her house, and that this activity caused a substantial injury to Freeman. We do not entirely agree with either party's position. Therefore, in order to determine whether the judgment before us comports with the manifest weight of the evidence, we must first address the rather novel question of what burdens of proof exist in the abatement of "drug nuisances."

■ The cause of action in the case before us is created by R.C. 3719.10, which reads in its entirety:

"Premises or real estate, including vacant land, on which a felony violation of Chapter 2925. or 3719. of the Revised Code occurs constitute a nuisance subject to abatement pursuant to Chapter 3767 of the Revised Code."

Since the nuisance has been defined by the General Assembly, the applicable law is clearly nuisance *per se*, not nuisance *per accidens* as Pierce argues. *State, ex rel. Brown, v. Chase Foundry & Mfg. Co.* (1982), 8 Ohio App.3d 96, 100, 8 OBR 129, 134, 456 N.E.2d 528, 534. With nuisances *per se*:

"It is established law in Ohio that, when a statute grants a specific injunctive remedy to an individual or to the state, the party requesting the injunction 'need not aver and show, as under ordinary rules in equity, that great or irreparable injury is about to be done for which he has no adequate remedy at law * * *.' " *Ackerman v. Tri–City Geriatric & Health Care, Inc.* (1978), 55 Ohio St.2d 51, 56, 9 O.O.3d 62, 65, 378 N.E.2d 145, 148, citing *Stephan v. Daniels* (1875), 27 Ohio St. 527, 536. Therefore, Freeman did not need to prove that he was injured by the alleged activities at the Pierce home.

■ Pierce also argues that since the provisions of R.C. 3719.10 make reference to criminal statutes, then Freeman should be obliged to prove beyond a reasonable doubt that a felony drug offense has occurred. We do not agree. R.C. 3719.10 is a civil statute, not a criminal one. Contrary to Pierce's assertion, she has not been "accused of an offense" and therefore is not entitled under R.C. 2901.05(A) to be "proven guilty beyond a reasonable doubt." It is of no significance that the nuisance statute makes reference to certain criminal statutes. R.C. 3719.10 requires only a *de facto* "violation" of criminal law, not a *de jure* "conviction." In this respect, it is like negligence *per se*, in that a plaintiff need only prove by a preponderance of the evidence that the defendant "violated" the statute upon which the tort action is based, even if the statute itself would require culpability to be shown beyond a reasonable doubt if a criminal action were brought on the same facts. *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440; *Hatter v. Cathey* (Jan. 11, 1990), Montgomery App. No. CA 11254, unreported, 1990 WL 1782.

■ On the other hand, Freeman argues that the burden of proof shifts to the defendant after a *prima facie* showing by the relator that a drug offense has occurred. In support of this contention, Freeman directs our attention to three instances in the procedural framework for nuisance abatement that mention burdens of proof which fall upon owners of real or personal property involved in the action.

Prior to the issuance of the preliminary injunction, the owner of the premises can avoid the closing of his property if he "shows to the satisfaction of the court or judge that the nuisance complained of is abated, or that such

person proceed forthwith to enforce his rights under Section 3767.10 of the Revised Code * * * ".[1] R.C. 3767.04. The same section also provides that:

"The owner of any real or personal property closed or restrained to be closed or restrained may appear between the filing of the petition and the hearing on the application for a permanent injunction and, upon payment of all costs incurred and upon the filing of a bond by the owner of the real property with sureties to be approved by the clerk in the full value of the property to be ascertained by the court, or, in vacation, by the judge, conditioned that such owner will immediately abate the nuisance and prevent the same from being established or kept until the decision of the court or judge is rendered on the application for a permanent injunction, then the court, or judge in vacation, *if satisfied of the good faith of the owner of the real property and of innocence on the part of any owner of the personal property of any knowledge of the use of such personal property as a nuisance and that, with reasonable care and diligence, such owner could not have known thereof,* shall deliver such real or personal property, or both, to the respective owners thereof, and discharge or refrain from issuing at the time of the hearing on the application for the temporary injunction any order closing such real property or restraining the removal or interference with such personal property." (Emphasis added.)

Finally, if the trial court orders the contents of the nuisance premises to be sold, owners of these items may recover them if they appear within ten days of the issuance of the permanent injunction and "prove innocence, to the satisfaction of the court, of any knowledge of said use thereof and that with reasonable care and diligence, they could not have known thereof." R.C. 3767.06.

From these sections, Freeman concludes that the only burden upon the relator is to show that a felony drug offense has occurred. At that point, Freeman argues, the only way that closure can be avoided is if the defendant proves that she did not know, and with due diligence could not have known that the property was being used in illegal activities. We do not agree.

The confusion arises from the fact that the owner of the property is not necessarily a defendant in the nuisance action. Such a suit may be brought against "[a]ny person, who uses, occupies, establishes, or conducts a nuisance, or aids or abets therein, and the owner, agent, or lessee of any interest in any such nuisance * * *." R.C. 3767.02. The provisions that Freeman draws our attention to are procedures for persons who are not defendants in the

---

1. R.C. 3767.10 provides that a lease is voidable at the owner's option if the tenant maintains a nuisance on the property.

nuisance action to intervene so as to avoid the loss of their real or personal property. These provisions have no bearing upon whether the relator has established his case against the defendant.

We find guidance in a decision by the Lucas County Court of Common Pleas, in *State, ex rel. Pizza, v. Tom S.A. Inc.* (1981), 68 Ohio Misc. 19, 23–24, 22 O.O.3d 309, 312, 428 N.E.2d 878, 882, which is the only reported case on this subject.

" * * * R.C. 3719.10, contrary to plaintiff's argument, merely *defines* what is a nuisance. It says nothing of what procedures are to be used to abate such a nuisance. R.C. Chapter 3767 must be used to determine what persons are liable for a nuisance and what procedures must be followed to abate such a nuisance. A person cannot be found guilty of maintaining a nuisance and subject to abatement of the activity causing such nuisance, unless the person uses, occupies, establishes, or conducts a nuisance, or aids or abets therein. R.C. 3767.02. This statute requires some degree of culpability on the part of the person against whom the injunction is sought. See *Smith v. California* (1959), 361 U.S. 147 [80 S.Ct. 215, 4 L.Ed.2d 205, 14 O.O.2d 459]; *State, ex rel. Ewing, v. 'Without a Stitch'* (1974), 37 Ohio St.2d 95, 307 N.E.2d 911, appeal dismissed *sub nom. Art Theater Guild v. Ewing* (1975), 421 U.S. 923 [95 S.Ct. 1649, 44 L.Ed.2d 82]." (Emphasis sic.)

Freeman argues that *Tom S.A.* is distinguishable because it addressed First Amendment concerns that are not present in the case before us. We disagree. While *Tom S.A.* did involve certain freedom of expression issues unrelated to this case, Judge Riley emphasized that the language quoted above was offered "[i]n addition to the constitutional issues," and represented an independent ground for denying the injunction, due to relator's inability to meet his burden of proof. *Id.*, 68 Ohio Misc. at 23, 22 O.O.3d at 312, 428 N.E.2d at 882.

It is axiomatic that the party who asserts something has the burden of proving it. Where a party seeks injunctive relief pursuant to Civ.R. 65, the burden of proof is on the petitioner. See *George P. Ballas Buick–GMC, Inc. v. Taylor Buick, Inc.* (1981), 5 Ohio Misc.2d 16, 5 OBR 236, 449 N.E.2d 805. Absent explicit statutory language to the contrary, we see no reason why a relator in a nuisance action should be relieved of this burden when he seeks an injunction under R.C. 3767.02 *et seq.*

R.C. 3767.04 states that, "If upon hearing the allegations of the petition are sustained to the satisfaction of the court or judge, the court or judge shall issue a temporary injunction * * *." It has been held that this "temporary injunction" (which is repeatedly referred to throughout R.C. 3767.02 *et seq.*) is actually what is called a "preliminary injunction" in Civ.R. 65. *State, ex rel.*

*Pizza, v. Rayford* (Aug. 31, 1990), Lucas App. No. L–89–243, unreported, 1990 WL 125658. Since the same procedures apply to obtaining both preliminary and permanent injunctions, R.C. 3767.04, it is clear that the relator must sustain the allegations of his petition in order to obtain an injunction closing the premises. Thus, the burden of proof does remain upon the relator.

■ It is less clear what *degree* of proof is required of the relator. R.C. 3767.02 *et seq.* repeatedly states that allegations be proved "to the satisfaction of the court." Since this phrase has no clear statutory meaning, we must turn to the common law for guidance. We have held that in order to obtain an injunction, a petitioner must prove his allegations by clear and convincing evidence. *Zavakos v. Zavakos Enterprises, Inc.* (May 26, 1989), Montgomery App. No. 11457, unreported, 1989 WL 55632, citing *Southern Ohio Bank v. Southern Ohio Savings Assn.* (1976), 51 Ohio App.2d 67, 5 O.O.3d 183, 366 N.E.2d 296; see, also, *White v. Long* (1967), 12 Ohio App.2d 136, 41 O.O.2d 200, 231 N.E.2d 337. Again, we see no reason why the abatement of nuisances should require a lesser degree of proof than other actions which seek injunctive relief. Moreover, the elevated burden seems especially appropriate when the defendant faces the potential loss of her real and personal property.

■ Finally, we turn to the question of what elements the relator must prove. We agree with the parties that there must be a threshold showing that a felony violation of R.C. Chapter 2925 or 3719 has occurred on the premises. The other elements can be found in the statutes. R.C. 3767.05 states that:

" * * * evidence of the general reputation of the place or an admission or finding of guilt of any person under the criminal laws against prostitution, lewdness, or assignation [or felony drug offenses by virtue of R.C. 3719.10] at any such place is admissible for the purpose of proving the existence of such nuisance and is prima-facie evidence of such nuisance and of knowledge of and of acquiescence and participation therein on the part of the person charged with maintaining said nuisance."

Clearly, there would be no reason for including evidentiary presumptions in the statute unless it were *necessary* that the relator prove these elements. Therefore, the relator must show that the defendant knew of the drug offenses, and either participated in them, or acquiesced in their occurrence.[2]

---

**2.** R.C. 3767.05 actually uses the word "and" between acquiescence and participation. However, we cannot believe that the legislature intended for the relator to be required to prove that the defendant *both* acquiesced *and* participated in drug offenses. These terms are most often used in a mutually exclusive sense, in that one requires a failure to object or to protest, and the other a positive act. The most persuasive interpretation is that proof of *either* acquiescence *or* participation is sufficient for an abatement order.

The relator may use, but is not limited to, reputation and convictions arising from the premises to prove these elements. In essence, this is equivalent to the requisite "degree of culpability" on the defendant's part, referred to in *Tom, S.A., supra.* Without such a requirement, the statute would seem to authorize any resident of the county to trespass on an innocent landowner's property, commit a drug offense there, and then commence proceedings to have the property declared a nuisance. Such an absurd result could not have been intended by the legislature.

In conclusion, we hold that in order to obtain an abatement order pursuant to R.C. 3719.10 and 3767.02 *et seq.*, it is necessary for the relator to prove by clear and convincing evidence that the defendant had knowledge of and either acquiesced to or participated in a felony violation of R.C. Chapter 2925 or 3719 on the property.

We now turn to the question of whether, given this standard, the judgment in the case before us is against the manifest weight of the evidence. We hold that it is not.

The trial court heard evidence that on February 17, 1987, the Dayton Police Department discovered, pursuant to a search warrant, sixty-three bags of marijuana and a quantity of "crack" cocaine in the Pierce home. Upon these facts, Pierce's son, Jessie, Jr., was charged with aggravated trafficking, by virtue of possession of three times the bulk amount, R.C. 2925.03(A)(6) (which is a second degree felony, R.C. 2925.03[E][2] ), and drug abuse (Schedule II), R.C. 2925.11(A) (which is a fourth degree felony, R.C. 2925.11[C][1] ). On April 18, 1989, the Montgomery County Sheriff's Office performed an inventory of the contents of the Pierce home pursuant to the temporary restraining order obtained by Freeman under R.C. 3767.04. The deputies discovered 2,209.66 grams, or approximately 4.8 pounds, of marijuana. Since this, too, is more than three times the bulk amount of marijuana, there was evidence that another second degree felony violation had occurred at the Pierce home. R.C. 2925.03(E)(2). Moreover, since this violation occurred while Jesse, Jr. was imprisoned, it would rebut Pierce's contention that the drug violations were exclusively caused by her son, and ceased with his incarceration.

Detective Kenneth Beall of the Dayton Police Department testified that on April 13, 1989, he witnessed what, in his expert opinion, appeared to be a series of drug transactions on Pierce's property. Detective Beall testified that during the hour and a half that he watched, numerous cars were flagged down in front of the Pierce home and "quick hand-to-hand exchanges" took place between the drivers and the people in Pierce's yard. While this was going on, other people stood at either end of the street and occasionally shouted "rollers!" Det. Beall testified that this term "is used by lookouts in

the street-level drug transaction areas to warn buyers and sellers that the police were approaching."

Magdalene Boyd, a neighbor of Pierce, testified that the activities observed by Det. Beall had been occurring at the Pierce home for more than three years. Boyd also testified that she had been approached on several occasions while driving by the Pierce home and was asked if she wished to buy a "nickel bag" of marijuana. Boyd recognized the people who offered her drugs as residents of the Pierce home.

Lt. James Finnigan of the Dayton Police Department testified that the "drug hotline" had received more than ten anonymous tips in the previous year complaining of drug sales at the Pierce home. Freeman, Lt. Finnigan, and Boyd all testified that the Pierce home had the reputation of being a place where illegal drug sales were routinely conducted. As discussed above, this reputation evidence was *prima facie* proof that Pierce knew of and acquiesced in the felony drug violations that occurred on her premises. R.C. 3767.05. However, more direct evidence was also offered on this point. Pierce acknowledged having signed an inventory form in February 1987 which stated that marijuana and cocaine were found at her home. Pierce also admitted knowing that five pounds of marijuana were found in her house after Freeman commenced this action. Finally, Jim Baxter, a housing inspector for the city of Dayton, issued a notice of zoning violation to Pierce on January 31, 1989, which read, "single family structure being used as a commercial unit, drug sales." Pierce acknowledged having received this notice.

It is well-established that "judgments supported by some competent, credible evidence going to all of the elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Given the testimony above, we cannot say that the trial court erred in finding that Freeman had shown by clear and convincing evidence that Pierce knew of and acquiesced to numerous felony drug offenses on her property.

Pierce's sole assignment of error is overruled.

### III

Pierce's sole assignment of error having been overruled, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN and GRADY, JJ., concur.