The STATE ex rel. FISHER, Atty. Gen., Appellee,

v.

RENO HOTEL, INC. et al., Appellants.

[Cite as *State ex rel. Fisher v. Reno Hotel, Inc.* (1994), 95 Ohio App.3d 67.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65169.

Decided May 16, 1994.

Lee Fisher, Attorney General, William M. O'Neill and Nancy H. Rogoff, Assistant Attorneys General, for appellee.

Allen L. Perry and Ishmael C. Childs, for appellants.

---

THOMAS J. PARRINO, Judge.

Defendants Reno Hotel, Inc. ("Reno Hotel") and its operator Bruce Johnson appeal from the order of the trial court which concluded that the Reno Hotel was a public nuisance pursuant to R.C. 3767.01. For the reasons set forth below, we affirm.

I

On December 9, 1992, the state of Ohio, through relator the Attorney General, filed a complaint pursuant to the public nuisance abatement law, R.C. Chapter 3767, to close the Reno Hotel. In its complaint, the state alleged that the premises had been used for the purpose of conducting prostitution. Also on December 9, 1992, the state filed an application for a preliminary injunction to close the premises during the pendency of the action.

On December 15, 1992, the trial court held an evidentiary hearing on the state's application for a preliminary injunction. As the hearing commenced, defense counsel objected that he had not been given sufficient advance notice of the hearing. According to counsel, he had received only four days' notice, and not the five days' notice mandated by R.C. 3767.04, because pursuant to Civ.R. 6(A), Saturdays and Sundays are excluded from the computation of time periods of less than seven days. The trial court concluded that Civ.R. 6(A) is not applicable to extend the time limits set forth in R.C. 3767.04 and it proceeded with the hearing.

For its case, the state presented the testimony of two women who regularly used rooms at the hotel for engaging in prostitution, and four Cleveland Police Officers who had conducted surveillance of activities occurring at the hotel.

Joann Huges and Cathy Orosz testified that several days per week they solicit in the vicinity of the hotel and engage in sexual activity there. The hotel requires that the woman sign a registration card and the customer pays $12 for the room. The couple is not given a key and is permitted to remain in the room for up to two hours.

Both women further established that they would not remain in the room for the entire two hours, but would instead attempt to solicit as many men as possible in this time period. The hotel would again reimpose the $12 room charge if the women returned within the two-hour period, and the women were often given the same room.

Finally, the women established that before arriving at the hotel to solicit, they would sometimes call the hotel to determine whether members of the Cleveland Police Vice Squad were in the area.

Cleveland Police Detective Shelly Patena testified that she worked as a decoy prostitute in the area of the Reno Hotel in connection with a vice unit investigation. Within a one-hour time period on October 23, 1992, Patena went to the hotel with three different male undercover officers. On each visit, Patena registered as "Tina McMichaels," the couple was given room No. 1, and the male was charged $12. On the second visit, Patena marked the bed sheet with her lipstick, then determined that the sheets were not changed between the second and third visits.

Cleveland Police Sgt. Michael Thomas, Officer Thomas Larkin, and Det. Earnest Graves established that they had made numerous arrests for prostitution in the area of the hotel, and that during a three-day period in October 1992, they observed women whom they had previously arrested for prostitution entering and reentering the hotel with different males.

The defense did not present evidence, and at the close of the hearing, the trial court granted the state's application for a preliminary injunction. One month later, the trial court granted a permanent injunction, and imposed a statutory tax and other costs upon defendants.

Defendants now appeal.

## II

For their first assignment of error, defendants complain that the trial court erred in failing to extend the five day notice provision of R.C. 3767.04 by application of Civ.R. 6(A).

R.C. 3767.04 provides as follows:

"After the filing of the petition, application for a temporary injunction may be made to the court or a judge thereof who shall grant a hearing within ten days after the filing. * * *

"A copy of the complaint, together with a notice of the time and place of the hearing of the application for a temporary injunction, shall be served upon the defendant at least five days before such hearing. * * *"

Civ.R. 6(A) in turn provides as follows:

" * * * When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. * * * "

However, Civ.R. 1 provides:

"These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * (7) in all other special statutory proceedings * * *."

In *Tower City Properties v. Bd. of Revision* (1990), 49 Ohio St.3d 67, 69, 551 N.E.2d 122, 124, the Supreme Court stated:

"*Price v. Westinghouse Elec. Corp.* (1982), 70 Ohio St.2d 131, 24 O.O.3d 237, 435 N.E.2d 1114, recited several principles previously announced by this court concerning this rule. We called it a rule of inclusion rather than exclusion. We noted that we had found some of the Civil Rules applicable to special statutory proceedings and inapplicable to others. In *Price,* at 133, 24 O.O.3d at 239, 435 N.E.2d at 1116, we quoted the statement of philosophy from *State, ex rel. Millington v. Weir* (1978), 60 Ohio App.2d 348, 349, 14 O.O.3d 310, 311, 397 N.E.2d 770, 772:

" ' "The civil rules should be held to be clearly inapplicable only when their use will alter the basic statutory purpose for which the specific procedure was originally provided in the special statutory action." ' "

With this principle in mind, we note as an initial matter that analogous statutory provisions for the abatement of public nuisances have been deemed "special proceedings." See *State v. Reynolds* (1960), 113 Ohio App. 469, 18 O.O.2d 23, 178 N.E.2d 842. As to the applicability of the Civil Rules, we further note that in *State ex rel. Pizza v. Rayford* (1992), 62 Ohio St.3d 382, 384, 582 N.E.2d 992, 994, the Supreme Court rejected the contention that the time periods set forth in Civ.R. 65 control the time limits set forth in R.C. 3767.04. The court stated:

"In spite of the plain language in the statute, appellant urges us to hold that Civ.R. 65, not the statute, controls the time by which the court must act. Appellant argues that the expiration of the temporary restraining order, not the statutory ten-day period, was the critical point by which the court was required to hold the hearing, and that because the court held the hearing prior to the expiration of the TRO, the court did not err. We decline to adopt that reasoning.

"Appellant confuses the relationship between two entirely independent forms of relief, namely the preliminary injunction and the *ex parte* TRO. Although the statute suggests that an application for a preliminary injunction is a prerequisite

to the issuance of an *ex parte* TRO preventing interference with the property alleged to be a nuisance, the date upon which the preliminary injunction hearing must be set is wholly separate from the expiration of the TRO. Moreover, because a petitioner is not required to apply for a TRO, the duration of such an order could not possibly serve as a benchmark by which the hearing date on a motion for a preliminary injunction should be set."

In light of *Rayford*, we conclude that R.C. Chapter 3767 sets forth an independent form of relief. Moreover, because the basic purpose for R.C. 3767.04 is the speedy resolution of a complaint for a temporary injunction, Civ.R. 6(A) would clearly alter that purpose and is therefore inapplicable.

Further, as the *Rayford* court noted, any deficiencies in meeting required time limits do not divest the adjudicatory body of jurisdiction. *Id.*, 62 Ohio St.3d at 384, 582 N.E.2d at 994.

Finally, even assuming that Civ.R. 6(A) is applicable to extend the notice provisions of R.C. 3767.04, the record fails to demonstrate that defendants suffered any prejudice in connection with the court's ruling since defendants did not indicate how their case would have been established if additional notice had been provided.

The first assignment of error is overruled.

## III

In their next assignment of error, defendants first contend that (1) since their property was built before R.C. Chapter 3767 was enacted, the statutes are inapplicable, and (2) that application of R.C. Chapter 3767 under these circumstances violates constitutional prohibitions against *ex post facto* laws and the impairment of existing contracts.

With regard to the first of these contentions, the court in *Stow v. Griggy* (1983), 6 Ohio App.3d 65, 66, 6 OBR 504, 504–505, 453 N.E.2d 1125, 1127, held:

"It is fundamental that private property is held subject to the authority of the state to regulate its use for the protection of the public health and safety. 16 Ohio Jurisprudence 3d 531, Constitutional Law, Section 399. Legislation may provide that a particular use of land is unlawful as a nuisance. This is so, even though such use existed prior to the legislative enactment. *Ghaster Properties, Inc. v. Preston* (1964), 176 Ohio St. 425 [27 O.O.2d 388, 200 N.E.2d 328], paragraph two of the syllabus. Furthermore, when a particular use has been declared a nuisance it is then an unlawful use and the doctrine of nonconforming use cannot be applied. *Id.* at 441 [27 O.O.2d at 397–398, 200 N.E.2d at 339]."

We find this reasoning pertinent herein, and therefore reject the first contention.

With regard to the second contention, we conclude that since defendants did not assert the constitutional issues below, they are therefore waived. *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus.

The second assignment of error is overruled.

## IV

Defendants next assert that the court acted contrary to the weight of the evidence and deprived them of due process of law in granting the permanent injunction. Because we have not been provided with a transcript of the proceeding on the hearing for a permanent injunction, we must presume regularity. See *Columbus v. Hodge* (1987), 37 Ohio App.3d 68, 69, 523 N.E.2d 515, 515. Accordingly, this assignment of error is overruled.

## V

■ For their final assignment of error, defendants assert that there is insufficient evidence to establish that the hotel was culpable for conducting a public nuisance.

Insofar as this assignment of error contests the trial court's grant of a permanent injunction, it is rejected for the reasons set forth in Section IV, *supra.*

Insofar as this assignment of error contests the grant of a preliminary injunction, we note that the evidentiary burden upon the relator has been defined as follows:

" '* * * A person cannot be found guilty of maintaining a nuisance and subject to abatement of the activity causing such nuisance, unless the person uses, occupies, establishes, or conducts a nuisance, or aids or abets therein. R.C. 3767.02. This statute requires some degree of culpability on the part of the person against whom the injunction is sought. See *Smith v. California* (1959), 361 U.S. 147 [80 S.Ct. 215, 4 L.Ed.2d 205, 14 O.O.2d 459]; *State, ex rel. Ewing, v. "Without a Stitch"* (1974), 37 Ohio St.2d 95 [66 O.O.2d 223], 307 N.E.2d 911, appeal dismissed *sub nom. Art Theater Guild v. Ewing* (1975), 421 U.S. 923 [95 S.Ct. 1649, 44 L.Ed.2d 82].' (Emphasis *sic.*)

" * * *

"It is axiomatic that the party who asserts something has the burden of proving it. Where a party seeks injunctive relief pursuant to Civ.R. 65, the burden of proof is on the petitioner. See *George P. Ballas Buick–GMC, Inc. v. Taylor Buick, Inc.* (1981), 5 Ohio Misc.2d 16, 5 OBR 236, 449 N.E.2d 805.

Absent explicit statutory language to the contrary, we see no reason why a relator in a nuisance action should be relieved of this burden when he seeks an injunction under R.C. 3767.02 *et seq.*

"R.C. 3767.04 states that, 'If upon hearing the allegations of the petition are sustained to the satisfaction of the court or judge, the court or judge shall issue a temporary injunction * * *.' It has been held that this 'temporary injunction' (which is repeatedly referred to throughout R.C. 3767.02 *et seq.*) is actually what is called a 'preliminary injunction' in Civ.R. 65. *State, ex rel. Pizza, v. Rayford* (Aug. 31, 1990), Lucas App. No. L–89–243, unreported, 1990 WL 125658. Since the same procedures apply to obtaining both preliminary and permanent injunctions, R.C. 3767.04, it is clear that the relator must sustain the allegations of his petition in order to obtain an injunction closing the premises. Thus, the burden of proof does remain upon the relator.

"It is less clear what *degree* of proof is required of the relator. R.C. 3767.02 *et seq.* repeatedly states that allegations be proved 'to the satisfaction of the court.' Since this phrase has no clear statutory meaning, we must turn to the common law for guidance. We have held that in order to obtain an injunction, a petitioner must prove his allegations by clear and convincing evidence. * * * [Emphasis *sic.*]

" * * *

"In conclusion, we hold that in order to obtain an abatement order pursuant to R.C. 3719.10 and 3767.02 *et seq.*, it is necessary for the relator to prove by clear and convincing evidence that the defendant had knowledge of and either acquiesced to or participated in a felony violation of R.C. Chapter 2925 or 3719 on the property." *State ex rel. Freeman v. Pierce* (1991), 61 Ohio App.3d 663, 669–671, 573 N.E.2d 747, 752.

In accordance with the foregoing, we conclude that the state did prove by clear and convincing evidence that the operators of the Reno Hotel knew that prostitution was being conducted at the hotel, and participated in the prostitution in connection with their room charges, registration of the same hotel room several times within an hour, failure to provide keys, and failure to properly clean and care for the room. Accordingly, culpability was established in conformance with the requisite evidentiary burden, and this assigned error is therefore overruled.

*Judgment affirmed.*

KRUPANSKY, P.J., and DAVID T. MATIA, J., concur.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.