JOURNAL ENTRY AND OPINION
{¶ 1} The City of Cleveland appeals from the judgment of the trial court that denied its petition for nuisance abatement in which it sought to enjoin Mohammed Alahmad from operating his gas station/convenience store on Community College Avenue. For the reason set forth below, we affirm.
 {¶ 2} On November 18, 2004, the city filed a petition to close the subject premises for one year, alleging that the property has been the site of constant illegal drug activity resulting in numerous arrests and that Alahmad had not cooperated with the police in stemming illegal drug activity.
 {¶ 3} The trial court imposed a temporary restraining order on November 19, 2004, and the matter proceeded to hearing on the city's request for a permanent injunction on January 7, 2005.
 {¶ 4} For its case, the city presented the testimony of Cleveland Police Officers Andres Gonzalez, Terrence Shoulders, Brian Moore, Patrick McLain, Lawrence Smith, Jeff Follmer, and Michael Betley. It also presented testimony from Cuyahoga Metropolitan Housing Authority ("CMHA") Paul Shaughnessy and then-Cleveland City Council President Frank Jackson, Sunoco representative Jack Von Ewegen, residents Isaac Glover, Cassandra Lee and Andrea Flowers.
 {¶ 5} Third District Commander Andres Gonzalez testified that the police had received over 500 drug-related complaints at respondent's property in 2004, including several which Gonzales witnessed involving people pretending to get gas. In August 2004, Gonzalez scheduled a meeting with respondent and Sunoco representative Jack Von Ewegen to resolve the drug trafficking problem. Gonzalez told respondent that he was concerned that there was not enough supervision of patrons and that he believed that the ownership at the gas station was allowing these individuals on their property and conducting drug transactions." Following this meeting respondent was to submit a plan for preventing drug trafficking. Gonzalez proposed that the entrance to East 40th Street be closed off, that respondent hire a security guard to limit loitering and that respondent attend block watch meetings.
 {¶ 6} On cross-examination, Gonzalez admitted that following the August 2004 meeting, respondent hired a security guard, installed security cameras and made structural improvements to the premises. He further acknowledged that the calls to police would also include any calls made by respondent. Gonzalez also conceded that the premises are situated in a high crime area, bounded by the Outwaite and Carver Park public housing projects.
 {¶ 7} Gonzalez has also tried to close down another store operated by respondent in a different area of Cleveland.
 {¶ 8} Vice Unit Sgt. Terrence Shoulders testified that there have been numerous drug investigations at the subject premises. He has received complaints of drug sales in the parking lot and in some instances, the suspects flee into the store. Shoulders informed respondent that he needed to do something about the illegal activity and that the owner has never called him to report any illegal activity. He also stated that the area has "quieted down" since the TRO was granted, but he admitted, on cross-examination, that there is still drug activity in the area and that drugs were never found inside of respondent's store.
 {¶ 9} Officers Moore, McLain and Smith established that there have been over fifty drug-related arrests at the subject property and that suspects sometimes had drugs in vehicles at the gas station or near the service pumps. They testified about approximately fifteen separate instances which resulted in arrests at the premises. In some of the incidents, the suspects fled from the parking lot of the property to the store.
 {¶ 10} Vice Det. Jeff Follmer testified that over a two-day period in May 2004, he observed between ten and twenty drug sales. He admitted on cross-examination, however, that he made no arrests at this time and that neither respondent nor his employees were involved in any illegal activity.
 {¶ 11} Officer Betley stated that on November 17, 2004, he responded to a call concerning a man who had been loitering outside the store and engaging store patrons in conversation as they entered or exited. A pat down search revealed that the man had 12 bags of marijuana. He admitted on cross-examination, however, that a narrative of the call indicates that the person who called for assistance informed police as follows: "male selling drugs, refusing to leave."
 {¶ 12} CMHA Officer Shaughnessy testified that he conducted surveillance and observed hand to hand drug transactions in the parking lot of the gas station which resulted in arrests. He also stated that if residents of CMHA traffic in drugs they are evicted.
 {¶ 13} Von Ewegen testified that he was aware of the history of drug activity at the gas station and that following the meeting with Gonzalez, he worked with respondent to address Sunoco's image requirements and customer behavioral problems. Changes including hiring a twenty-four hour security guard, and improved lighting. These changes were not made, however. Von Ewegen noted, on cross-examination, however, that respondent had placed a purchase order for a lighted canopy for the parking lot. He also admitted that Gonzalez told respondent that he was responsible for removing loiterers from the premises and that it was not the job of the police to "manage the behavior of Mr. Alahmad's clientele. Neighboring residents Isaac Glover and Cassandra Lee testified that while they were on respondent's property, people have approached them to buy drugs. Resident Andrea Flowers testified that she observes people loitering there.
 {¶ 14} Then-councilman Frank Jackson testified that he lives near the gas station and frequently observes males loitering. He also testified that he frequently receives residents' complaints about drug dealing there. He acknowledged that respondent has tried to call him but Jackson has not taken his call. Jackson admitted on cross-examination that the area is one of the three most crime-ridden sections of the city.
 {¶ 15} Respondent presented testimony from neighboring residents Teresa Henderson, Lakita Canon, Margarita Grant, and Ramonita Negron, employees Abdallah Alrawashdeh, Donnell Wingfield, and Kelvin Allen. Respondent also testified on his own behalf.
 {¶ 16} Henderson, Canon, Grant and Negron testified that the owner or the store's security guard would chase loiterers from the premises and call police but police took many hours to respond or did not respond at all.
 {¶ 17} Alrawashdeh testified that respondent has instructed the employees to chase the drug dealers from the lot and to call the police when they observe drug activity. He further testified that it takes the police a long time to respond and that he has frequently fought with patrons in order to get them to leave.
 {¶ 18} He acknowledged that the security guard leaves at 8:00 p.m. but he explained that the night manager is large and imposing looking.
 {¶ 19} Night manager Wingfield testified that respondent instructed him to ask loiterers to leave the premises and to call police when they refuse to do so. Winfield further testified that in general, the drug dealing lessened after respondent hired the security guard. In the evenings, drug dealing occurs across the street from the gas station, at a store called "Dave's." Occasionally, however, he has had to chase loiterers from the premises and has also called the police.
 {¶ 20} Kelvin Allen testified that respondent hired him as a security guard to keep drug dealers from the premises and that he has been effective in reducing this problem.
 {¶ 21} Respondent testified that he has instructed his employees to keep drug dealers away out of the parking lot. He fired his former security officer for insufficient job performance. Following the meeting with Gonzalez, respondent hired Kelvin Allen, made arrangements to purchase a lighted canopy for the parking lot and repositioned the security cameras to focus on the parking lot.
In addition, responded has called the police many times and his employee called to report a drug sale on the night before the city sought the TRO. Respondent also testified that drug trafficking occurs across the street from his property and he has assisted police in investigating this crime.
 {¶ 22} Respondent admitted that he does not have a security guard for later in the evening but he explained that there are fewer problems in this time period.
 {¶ 23} The trial court subsequently denied the city's request for a permanent injunction, and concluded as follows:
 {¶ 24} "Based upon evidence adduced at hearing, the court finds by clear and convincing evidence that illegal drug activity did occur on the subject premises. However, the city failed to establish by clear and convincing evidence that respondents either acquiesced to or participated in commission of the felony offenses."
 {¶ 25} The city now appeals and assigns the following error for our review:
 {¶ 26} "The trial judge erred when, after it held that illegal-drug activity occurred at the gas station, which constitutes a nuisance, she failed to impose a permanent injunction and an abatement order against the gas station owners, as R.C. 3767.05(D) and 3767.05(A) require."
 {¶ 27} Within this assignment of error, the city maintains that the trial court erred in refusing to grant injunctive relief because it presented clear and convincing evidence that the premises is a nuisance. Specifically, the city notes that it presented evidence of numerous drug sales at the gas station and Alahmad admitted that there was drug activity at the premises.
 {¶ 28} In C.E. Morris v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, the Ohio Supreme Court set forth the appellate standard to be applied when a civil judgment is challenged on the basis of manifest weight of the evidence. Under this standard, we must examine the record to see whether the trial court's judgment is supported by "some competent, credible evidence going to all the essential elements of the case."
 {¶ 29} R.C. 3719.10 defines "nuisance" as follows:
 {¶ 30} "Premises or real estate, including vacant land, on which a felony violation of Chapters 2925. or 3719. * * * occurs constitute a nuisance subject to abatement pursuant to 3767."
 {¶ 31} This statute requires only a de facto `violation' of criminal law, not a de jure `conviction.'" State ex rel. Freemanv. Pierce (1991), 61 Ohio App.3d 663, 573 N.E.2d 747.
 {¶ 32} R.C. 3767.02(A) prescribes who is liable for such nuisance and states, in relevant part as follows:
 {¶ 33} "Any person, who uses, occupies, establishes, or conducts a nuisance, or aids or abets in the use, occupancy, establishment, or conduct of a nuisance; the owner, agent, or lessee of an interest in any such nuisance; any person who is employed in that nuisance by that owner, agent, or lessee; and any person who is in control of that nuisance is guilty of maintaining a nuisance[.]"
 {¶ 34} In order to obtain an abatement order pursuant to R.C.3767.02 et seq., or R.C. 3719.10, the plaintiff must establish by clear and convincing evidence that chronic felony violations of R.C. Chapter 2925 occurred on the premises. State ex rel.Freeman v. Pierce, supra; State ex rel. Miller v. Anthony,72 Ohio St.3d 132, 1995-Ohio-39, 647 N.E.2d 1368. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." State v. Eppinger,91 Ohio St.3d 158, 164, 2001-Ohio-247, 743 N.E.2d 881, quotingCross v. Ledford (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118.
 {¶ 35} In State ex rel. Pizza v. Rezcallah,84 Ohio St.3d 116, 1998 Ohio 313, 702 N.E.2d 81, the Supreme Court held as follows:
 {¶ 36} "R.C. 3767.02, which defines the offense of maintaining a nuisance, is clear and unambiguous and does not include a requirement of knowledge, acquiescence, or participation on the part of an owner of the property deemed to be a nuisance. We thus hold that R.C. 3767.02 does not require proof of acquiescence to or participation in the creation of a nuisance or the conduct constituting a nuisance in order to find an owner of a nuisance guilty of the civil offense of maintaining a nuisance.
 {¶ 37} "Proof of an owner's knowledge, acquiescence, or participation is relevant, however, in determining which statutory remedies may be imposed once the owner is found guilty of maintaining of a nuisance. * * *
 {¶ 38} "However, to the extent that R.C. 3767.06(A) mandates the imposition of a closure order directing the effectual closing of the place where a nuisance is found to exist against its use for any purpose for a period of one year, or requires the filing or renewal of a bond in lieu of such a closure order, when the owner of the property bears no culpable responsibility in the nature of acquiescence to or participation in the creation or perpetuation of the nuisance, the statute violates theFourteenth Amendment Due Process Clause and the Fifth Amendment Takings Clause of the United States Constitution, and Section 19, ArticleI of the Ohio Constitution."
 {¶ 39} Accord State ex rel. Rothal v. Smith,151 Ohio App.3d 289, 2002-Ohio-7328, 783 N.E.2d 1001 (the plaintiff must prove by clear and convincing evidence that the defendant had knowledge of and either acquiesced to or participated in a felony violation of R.C. Chapter 2925 or 3719 on the property); State,ex rel. Freeman v. Pierce (1991), 61 Ohio App.3d 663, 670,573 N.E.2d 747 (in order to obtain an abatement order pursuant to R.C. 3719.10 and 3767.02 et seq., it is necessary for the relator to prove by clear and convincing evidence that the defendant had knowledge of and either acquiesced to or participated in a felony violation of R.C. Chapter 2925 or 3719 on the property).
 {¶ 40} Upon reviewing the record in this matter, we conclude that the judgment of the trial court was supported by competent, credible evidence as the city did not demonstrate that the owner acquiesced to or participated in the drug law violations occurring at the premises. To the contrary, the record demonstrates that the owner took actions to abate the drug trafficking as he hired a security guard to remove loiterers from the premises, instructed his employees to ask loiterers to leave and to report drug trafficking to the police and repeatedly called the police to report illegal drug activity. In addition, the owner ordered a new lighted canopy and repositioned his security cameras to photograph the parking lot. In accordance with the foregoing, the trial court properly denied the city's request for a permanent injunction and one-year closure order.
 {¶ 41} The assignment of error is without merit.
Affirmed.
It is ordered that appellees recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., and Blackmon, J., concur.