OPINION
Gurley Ramey appeals from an order granting a permanent injunction against use of his property for one year. The order was issued on a finding that the property, a tavern, is a nuisance and that drug and alcohol violations had occurred there.
On May 31, 1994, Ramey purchased Jim's Place, a tavern, from Ralph Baker, and renamed it Gurley's Place. The liquor license remained in Baker's name, pending its transfer to Ramey. Ramey managed the tavern pursuant to a management agreement pending transfer of the liquor license.
Baker applied for a transfer of the liquor license. On January 4, 1995, the Division of Liquor Control denied the request, concluding that Ramey's operation of the tavern demonstrated a disregard of the law and that his prior convictions reflected on his fitness to operate a tavern. Baker appealed the decision, but subsequently terminated the appeal process. Baker also applied for a renewal of the license, which was denied because he was not the sole owner or operator of the tavern.
On September 6, and November 1, 1997, police searched the bar and found crack cocaine and marijuana. On November 12, 1997, the State filed a complaint against Ramey and Baker, alleging that the tavern was a nuisance and requesting an ex parte temporary restraining order, a preliminary injunction, and a permanent injunction against maintaining the nuisance pursuant to R.C.3767.01 et seq. and R.C. 4301.73. The State subsequently dismissed its complaint against Baker.
The trial court entered an ex parte temporary restraining order closing and padlocking the tavern on November 12, 1997, and scheduled a hearing on the request for a preliminary injunction for November 20. Upon the parties' joint motion, the trial court rescheduled the hearing for December 18, 1997. After the hearing, the trial court granted the preliminary injunction, and scheduled a hearing on the permanent injunction for January 16, 1998.
Ramey requested a six month continuance of the hearing on the permanent injunction to conduct discovery and to pursue settlement. The trial court granted Ramey's request. The hearing was scheduled for June 15, 1998, but it appears from the record that the hearing was delayed on three more occasions for reasons unknown. The hearing commenced on October 15, 1998, but was continued until November 24.
After concluding its hearings, the trial court found that Gurley's Place was a nuisance. The trial court granted the permanent injunction, stating that "[t]he overwhelming evidence of drug and liquor violations and the bad reputation of the bar clearly and convincing[ly] establish the owner's knowledge and acquiescence."
Ramey timely appealed and now presents five assignments of error.
Because the trial court's admission of evidence is central to resolution of most of the assignments of error, we will address Ramey's third assignment of error first.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING CAPTAIN TERRY FISHER TO TESTIFY AS TO EVENTS, EVIDENCE, REPORTS, AND CIRCUMSTANCES WHICH WERE HEARSAY AND ON WHICH HE LACKED PERSONAL KNOWLEDGE.
The State alleged that drug and liquor law violations had occurred at Gurley's Place, and sought injunctions to close it pursuant to R.C. Chp. 3767 et seq. and R.C. 4301.73. At the hearing on the preliminary injunction, the State sought to prove the alleged drug and liquor law violations by offering documentary evidence in the form of twenty-five exhibits through the testimony of Police Captain Terry Fisher. These exhibits consisted of letters, inter-office communications, property and arrest reports, and a summary of police dispatches to the tavern. Ramey objected to some, but not all, of the exhibits that the State attempted to introduce at the hearing on the preliminary injunction. He objected to all exhibits at the hearing on the permanent injunction.
Civ.R. 65(B)(2) states that "any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial." The purpose of the rule is to save time and expense for the parties and the court. See Hershorn v. Viereck (1985), 27 Ohio App.3d 242, 243
(citing McCormac, Ohio Civil Rules Practice (1970) 350, Section 14.10); see also Civ.R. 65, staff note 3.
"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appearsof record stating the specific ground of objection, if the specific ground was not apparent from the context. . . ." Evid. R. 103(A)(1) (emphasis added).
The object of Civ.R.65(B)(2) is convenience: to avoid duplicating foundational grounds and objections to admissibility at trial when the same matters were considered at the preliminary hearing. In view of its object, the Rule should reasonably be construed to waive objections to admissibility of evidence at trial when no objection was voiced and the evidence was admitted at the prior hearing, when an objection could have been timely made.
Because Ramey did not object to the admission of some exhibits during the hearing on the preliminary injunction, he has waived any error in their subsequent admission at the hearing on the permanent injunction. Civ.R. 65(B). The exhibits that the trial court received into evidence during the hearing on the preliminary injunction became part of the trial record absent a specific objection by Ramey and an abuse of discretion in the trial court's decision to admit that exhibit.
During the preliminary hearing, Ramey did object to the admission of a summary of police dispatches to Gurley's Place or its immediate surroundings. (Exhibit 1.) He argues on appeal that the trial court abused its discretion in admitting the exhibit into evidence.
Evid.R. 1006 provides for the admission of summaries of the contents of voluminous writings, recordings, or photographs. There are three conditions for admissibility pursuant to the Rule: 1) the underlying documents must be voluminous; 2) the party offering the summary must lay a proper foundation for the summary's introduction; and 3) the originals or duplicates of the underlying documents must be available for examination or copying.See Weissenberger, Ohio Evidence (1999) 665-66, Section 1006.1.
The question of whether the underlying documents are voluminous is for the trial court. See id. at 666. Although the trial court did not make a specific finding that the documents were voluminous, the summary reflects over 200 entries. A trial court could reasonably find that this number of documents is voluminous.
In laying the foundation, the underlying documents must be admissible, although not necessarily admitted, into evidence. In addition, "where charts, summaries, or calculations are to be introduced into evidence, the person who prepared the summaries, supervised the originals or controlled the originals, must testify to the foundation." Id. at 668, Section 1006.4.
Although the underlying documents were not admitted into evidence, Captain Fisher testified that "[w]e prepared the summary to refer to individual incidents that have occurred at [Gurley's Place]." (Prelim. Tr. at 27). These incidents were reflected in "computer-aided dispatch, calls for service, and the general offense incident reports that have been written there. . . ." (Prelim. Tr. at 28).
While the documents underlying the summary may be introduced into evidence or the court can order a party to do so, the Rule "requires only that documents be made available for inspection and copying, and the introduction of summaries is not conditional on the concomitant introduction of the originals or the delivery of the originals to the court for retention." Id. at 667, Section 1006.3. Upon Ramey's objection to the admission of the summary, the trial court granted him the opportunity to cross-examine Captain Fisher on each entry on the summary, but he did not do so. (Prelim. Tr. at 29). Moreover, Ramey did not request that the court order the State to introduce the underlying documents into evidence.
A trial court has discretion in whether or not to admit evidence. State v. Long (1978), 53 Ohio St.2d 91. The admission of evidence by a trial court will not be reversed absent an abuse of discretion. A decision that is an abuse of discretion is one that is "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v.Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256. On that standard, we cannot find that the trial court abused its discretion when it admitted the summary marked as Exhibit 1.
Ramey objected to the admission of Exhibit 12, an inter-office communication, arguing that it was irrelevant. (Prelim. Tr. 60). The trial court admitted the exhibit, finding that it was material and relevant to the hearing. The trial court stated the same reasoning upon Ramey's objection to Exhibits 13 and 14, which also are inter-office communications.
As stated previously, a reviewing court cannot find error where a party has not made a timely objection, stating the specific ground for the objection. Evid.R. 103(A)(1). Ramey objected frequently to the admission of many of the State's exhibits, arguing that they were hearsay. In respect to Exhibits 12, 13, and 14, however, Ramey objected on the grounds of relevance. (Prelim. Tr. at 60).
"`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Exhibits 12, 13, and 14 are relevant in that they tend to prove that underage drinking occurred in the tavern, which aided the trial court in determining whether there were liquor law violations at Gurley's Place.
In his appellate brief, Ramey argues that the trial court erred in admitting the exhibits because they are hearsay. Although we would agree that these three exhibits are hearsay, Ramey's failure to properly object on those grounds at the preliminary hearing waives this claim of error on appeal. SeePulides v. Niles Gun Show, Inc. (1996), 112 Ohio App.3d 609, 619.
Similarly, Ramey objected to Exhibit 21, an arrest report, during the preliminary hearing when Captain Fisher characterized a substance found in the tavern as crack cocaine. Ramey did not object that the arrest report was hearsay. Therefore, Ramey thus has waived the argument on appeal.
Ramey also objected to the admission of Exhibit 8, another inter-office communication, arguing that it was not a public record and that Captain Fisher did not have any personal knowledge of the assertions contained in it. (Prelim. Tr. at 56). The trial court overruled Ramey's objection, stating that it was prepared under Fisher's direction and control and that he was its custodian. (Prelim. Tr. at 58).
To admit a document pursuant to Evid. R. 803(8)(b), there are three foundational requirements.
 First, the governmental employer's agent who is the source of the information must have personal knowledge of the event or condition described in the report, as the qualifying phrase "matters observed" clearing imports. Second, the source must be under a legal duty to report the information. Third, the official agency must be legally required to prepare and maintain the record, as the term "duty" implies.
Weissenberger, Ohio Evidence Courtroom Manual (1999) 359, Chapter 803.
A police report is a public record, and those portions of a police report that contain "`matters observed pursuant to a duty imposed by law as to which matters there was a duty to report' are admissible into evidence" pursuant to Evid.R. 803(8)(b). Petti v.Perna (1993), 86 Ohio App.3d 508, 513; see also Sanders v.Hairston (1988), 51 Ohio App.3d 63, 64-65. However, the rule "prohibits the introduction of reports which recite an officer's observations of criminal activities or observations made as part of an investigation of criminal activities." State v. Ward
(1984), 15 Ohio St.3d 355, 358. Thus, evaluative and investigative reports are not admissible as exceptions to the hearsay rule pursuant to Evid.R. 803(8)(b). State v. Humphries
(1992), 79 Ohio App.3d 589, 597.
Internal communications, such as Exhibit 8, are not police records, and are not concerned with "matters observed pursuant to a duty imposed by law." These communications are more evaluative in nature. Thus, the trial court erred in admitting Exhibit 8 into evidence over Ramey's objection.
Civ. R. 61 states that a "court at every stage of the proceedings must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Although the trial court erred in admitting Exhibit 8 into evidence, there was sufficient evidence from which the trial court could conclude that chronic drug and alcohol violations were occurring at Gurley's Place. Evidence admitted at the preliminary hearing demonstrated that a nuisance existed on the premise. Exhibit 1 lists approximately 200 police dispatches to the tavern. There were letters and violation notices from the Division of Liquor Control, which documented liquor violations in the tavern. The State introduced a crime lab report, revealing that substances found on the premises tested to be cocaine and marijuana. We thus cannot find that the trial court committed reversible error in admitting Exhibit 8.
Ramey's third assignment of error is overruled.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT'S DECISION TO GRANT BOTH A PRELIMINARY AND A PERMANENT INJUNCTION ON THE DRUG NUISANCE LAW WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
There are three elements that a plaintiff must prove for a court to order a injunction against any use of a property pursuant to an R.C. Chp. 3767 nuisance action.
First, a plaintiff must show by clear and convincing evidence that chronic felony violations of R.C. Chp. 2925 or R.C. Chp. 3719 occurred on the premises. State ex rel. Freeman v. Pierce (1991),61 Ohio App.3d 663, 670; State ex rel. Miller v. Anthony (1995),72 Ohio St.3d 132, 135. "R.C. 3719.10 requires only a de facto
`violation' of criminal law, not a de jure conviction." State exrel. Freeman, supra, at 667.
Second, a plaintiff must present
 evidence of the general reputation of the place . . . or an admission or finding of guilt of any person under the criminal laws against . . . prohibited conduct at the place [which] is admissible for the purpose of proving the existence of the nuisance and is prima-facie evidence of the nuisance and of knowledge and of acquiescence and participation in the nuisance on the part of the person charged with maintaining it.
R.C. 3767.05(A) (emphasis added).
Third, the plaintiff must prove that the owner negligently or knowingly acquiesced or participated in the creation or perpetuation of the nuisance. State ex rel. Pizza v. Rezcallah
(1998), 84 Ohio St.3d 116, syllabus 2. Although the statute does not state this element, constitutional considerations demand that a court find this element of scienter to grant an injunction. Seeid.
During the preliminary hearing, numerous exhibits were introduced into evidence. These exhibits and Captain Fisher's testimony reveal that police found cocaine and marijuana on the premises on two separate occasions. On September 6, 1997, the police entered the tavern. A search revealed small packets of marijuana that were bundled together and crack cocaine that was inside a cooler behind the bar. (Prelim. Tr. at 45). The cocaine discovered weighed 26.43 grams. Pursuant to R.C.2925.11(C)(4)(c), possession of this amount is a felony of the third degree.
On November 1, 1997, the police also entered the tavern. A search revealed crack cocaine and marijuana. (Prelim. Tr. at 48). Captain Fisher did not testify as to the amount of crack cocaine that was found on November 1, but any amount would constitute a fifth degree felony. R.C. 2925.11(C)(4)(a).
Exhibit 1, the summary, also reflected a history of drug violations and other prohibited activity on the premises. Thus, there was clear and convincing evidence that chronic felonious drug activity had occurred on the premises.
Evidence of the general reputation of Gurley's Place was admissible as prima-facie evidence of the alleged nuisance. R.C.3767.05(A). Captain Fisher, as a member of the Springfield community, also testified during the preliminary hearing that Gurley's Place had a reputation as a "known haven for drug users and for the trafficking of drugs." (Prelim. Tr. at 35). Ramey, however, testified that Gurley's Place had a reputation as a nice place to go. (Perm. Tr. at 41).
We cannot say that the trial court abused its discretion in giving greater weight to Captain Fisher's testimony than it accorded to Ramey's.
 [W]here the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court. . . . "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
Myers v. Garson (1993), 66 Ohio St.3d 610, 614-15, 614 N.E.2d 742
(quoting Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273).
Finally, there is evidence from which a trial court could reasonably find that Ramey either knew or was negligent in that he should have known that drug violations were occurring on the premises. Under criminal statutes, negligent and knowing are defined in a way that is useful to this analysis.
"A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." R.C. 2901.22(D) (emphasis added).
Exhibit 1, a summary of police dispatches to the tavern, reveals that drug activity continually occurred after Ramey assumed management of the tavern in 1994. During this time, Ramey was present at the tavern each night after his work shift ended at Navistar International. (Prelim. Tr. at 87). Unlike a landlord who does not reside on the premises, Ramey was in Gurley's Place on a daily basis, and he was charged with management of the tavern. A trial court could reasonably find that Ramey should have perceived that chronic drug activity was occurring in the tavern or that he failed to perceive it because of a lack of due care.
Given all of the evidence presented during the preliminary hearing, we find that the State offered clear and convincing evidence showing that Gurley's Place constituted a nuisance, and that R.C. 3719.10 mandated abatement of the nuisance. The trial court thus did not err in granting both a preliminary and permanent injunction.
Ramey's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT'S DECISION TO GRANT BOTH A PRELIMINARY AND A PERMANENT INJUNCTION ON THE LIQUOR NUISANCE LAW WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
R.C. 4301.73 stated that
 Any room, house, building, boat, vehicle, structure, or place where beer or intoxicating liquor is manufactured, sold, bartered, possessed, or kept in violation of law, and all property kept and used in maintaining the same . . . is a common nuisance.
The State introduced evidence showing that the Division of Liquor Control had issued notices of violation to Ramey on September 6, and September 30, 1997. The Division issued the September 6th notice because of sale of beer to a minor and because of illegal drug activity on the premises. The Division issued the September 30th notice because Ramey was operating the tavern although Baker held the license.
The liquor control laws require that liquor licenses name all of the owners of an establishment. R.C. 4303.293(A). By failing to list Ramey as an owner, a violation of 4303.293(A) occurred.
Sale of beer or intoxicating liquor to persons under the age of twenty-one is prohibited. See R.C. 4301.69(A). The State introduced Exhibit 1, the summary, which showed chronic underage drinking in the tavern. The notice of violation that the Division of Liquor Control issued also provides evidence that Ramey had violated R.C. 4301.69(A). Thus, there were numerous violations of the liquor laws from which the trial court reasonably could conclude that Gurley's Place constituted a common nuisance. The trial court thus did not err in ordering abatement of that nuisance.
Ramey's further argument that his violation of liquor laws is moot because he no longer intends to operate Gurley's Place as a tavern is without merit. A court must find only that liquor law violations were occurring at the time of charged in the complaint to order an injunction. "The court need not find the property involved was being unlawfully used at the time of the hearing . . ." R.C. 4301.73. The fact that Ramey has no present intention to operate Gurley's Place as a tavern is irrelevant, because evidence shows that he was operating it in violation of the law at the time the temporary restraining order was issued.
There was clear and convincing evidence that Gurley's Place constituted a common nuisance pursuant to R.C. 4301.73. Ramey's intent to reopen the tavern is irrelevant. The trial court thus did not err in granting an injunction.
Ramey's second assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT VIOLATED THE APPELLANT'S RIGHTS UNDER BOTH THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
Ramey argues that his constitutional rights were violated because there was no evidence that he negligently or knowingly acquiesced to or participated in the drug or alcohol violations that form the basis of this action. He argues that the evidence reveals that he actually took steps to abate this nuisance. Ramey relies on State ex rel. Pizza v. Rezcallah (1998), 84 Ohio St.3d 116.Rezcallah, however, is distinguishable in that the property owners in Rezcallah "did not acquiesce to or participate in the specific use that created the nuisance." Id. at 126.
As discussed in the two previous assignments of error, the undisputed evidence demonstrates that Ramey was present at Gurley's Place each night after his work shift at Navistar International ended. (Prelim. Tr. at 87). He managed the tavern pursuant to the management agreement he executed with Baker. Numerous violations occurred on the premises during Ramey's management, and the police were dispatched frequently. Clear and convincing evidence supported the trial court's conclusion that Ramey negligently or knowingly acquiesced in the creation or perpetuation of the nuisance.
Ramey also argues that his due process rights were violated because the preliminary injunction had the effect of taking his property for a year before the trial court granted the permanent injunction. This argument is concerned with the nature and duration of the relief the court ordered, not the result involved.
Civ.R. 65(A) states the requirements that an applicant must meet before a court can grant an ex parte temporary restraining order. First, the applicant must establish that "immediate and irreparable injury, loss or damage will result to the applicant before the adverse party . . . can be heard in opposition." Second, the applicant's attorney must certify to the court, in writing, the efforts, if any, "which have been made to give notice and the reasons supporting his claim that notice should not be required."
In the State's certification as to why Ramey should not be notified about the temporary restraining order, the Springfield City Law Director certified that "advance notice to Defendants would result in the destruction, removal or concealment of evidence and contraband from the premises, as well as danger to the lives and safety of police officers and other officials involved in service and execution of the order." The State thus complied with the requirements of Civ.R. 65(A).
Civ.R. 65(A) also states that a temporary restraining order will expire within fourteen days. When the trial court entered the temporary restraining order on November 12, 1997, it set the preliminary hearing for November 20, 1997. Upon the joint motion of both parties, the trial court rescheduled the preliminary hearing for December 18, 1997. The party against whom the order is directed — Ramey — consented to an extension of the order for a period longer than its initial fourteen days. Ramey thus has waived any error in not having a hearing on the preliminary injunction within fourteen days of the temporary restraining order.
The trial court entered the preliminary injunction on December 19, 1997, and scheduled a trial for January 16, 1998. On January 15, Ramey requested a six month continuance to conduct discovery, to prepare for trial, and to hold settlement negotiations with the State. Thus, six months of the delay was at Ramey's own insistence.
Notwithstanding this additional delay, Ramey does not demonstrate how this delay further prejudiced his rights at trial. He alleges a series of delays and reschedulings by the court, but there is nothing in the record that supports these accusations. We conclude that the trial court did not violate Ramey's due process rights.
Ramey's fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY SUA SPONTE DISMISSING ALL OF DEFENDANT/APPELLANT'S COUNTERCLAIMS UPON GRANTING THE PERMANENT INJUNCTION.
In his answer to the State's claims, Ramey asserted counterclaims arising from the State's action, and made a jury demand on these counterclaims. He argues that the trial court erred in dismissing his counterclaims in the absence of any motion from the State.
On November 24, 1998, the trial court, sitting without a jury, held a hearing on the permanent injunction. On December 9, 1998, the trial court entered judgment in favor of the State. The trial court dismissed Ramey's counterclaims, stating that "[i]n view of the Court's decision, defendant's counterclaims are hereby dismissed at defendant's cost." Ramey argues that, notwithstanding the disposal of the State's claims against him, he should be permitted to present his counterclaims.
It is unclear from the record on what authority the trial court dismissed Ramey's counterclaims sua sponte. It may have been pursuant to Civ.R. 12(C), as a judgment on the pleadings. Or, it may have been pursuant to Civ.R. 56, as a summary judgment. In either event, due process requires both notice and an opportunity to be heard, which Ramey was clearly denied. Therefore, the trial court erred when it dismissed Ramey's counterclaims as it did.
Ramey's fifth assignment of error is sustained.
 Conclusion
Having sustained Ramey's fifth assignment of error, we will Reverse the order of the trial court to the extent that it dismissed Ramey's counterclaims, reinstating the claims for relief therein and remanding for further proceedings thereon. In all other respects, the judgment of the trial court is Affirmed.
YOUNG, J., concurs., FAIN, J., dissents.,