The STATE ex rel. ROTHAL, Dir. of Law, et al., Appellees,

v.

SMITH et al., Appellants.

[Cite as *State ex rel. Rothal v. Smith*, 151 Ohio App.3d 289, 2002-Ohio-7328.]

Court of Appeals of Ohio,
Ninth District, Summit County.

Nos. 20938 and 20950.

Decided Dec. 31, 2002.

290

Max Rothal, Director of Law, and Douglas J. Powley, Chief City Prosecutor, for appellee.

Scott W. Spencer, for appellants Dennis Smith and D. Michael Smith Enterprises, Inc.

Frank J. Witschey, for appellants George Family Trust and Josephine George.

SLABY, Presiding Judge.

{¶ 1} Appellants, Dennis M. Smith ("Dennis"), D. Michael Smith Enterprises, Inc., the George Family Trust, Anthony P. George, and Josephine H. George, appeal from the judgment of the Summit County Court of Common Pleas that found the Back Bar ("bar") and the bar's parking lot constituted nuisances and, therefore, ordered a permanent and perpetual injunction to abate the nuisances. Further, the trial court issued a closure order for a period of one year. We affirm.

{¶ 2} On September 25, 2001, appellees, the state of Ohio, Max Rothal, the Director of Law for the city of Akron, and the city of Akron, filed a complaint against appellants contending that the bar was a nuisance and requesting a permanent injunction. Thereafter, appellees moved for a temporary injunction, which the trial court granted. On October 24, 2001, the George Family Trust, Anthony P. George, and Josephine H. George (referred to collectively as "George") filed a cross-claim. Dennis and D. Michael Smith Enterprises, Inc. (referred to collectively as "Smith") filed a counterclaim against George and appellees and also instituted a third-party complaint against appellees. Due to the numerous claims, appellees moved for separate trials. Smith then moved for a hearing on appellees' motion for separate trials, pursuant to Civ.R. 42(B). The trial court did not hold a hearing, but it did grant appellees' motion for separate trials. Subsequently, a bench trial followed. The trial court determined that the bar and the bar's parking lot were nuisances. The trial court therefore ordered a permanent and perpetual injunction and further ordered that the properties could not be occupied or used for one year. It is from this order that Smith and

George have separately filed timely appeals. To facilitate review, we have addressed like assignments of error together.

## SMITH'S ASSIGNMENT OF ERROR I

{¶ 3} "The trial court's judgment is against the manifest weight of the evidence[.]"

## SMITH'S ASSIGNMENT OF ERROR VIII

{¶ 4} "The trial court erred by ordering closure of the Back Bar where no knowledge or acquiescence is demonstrated on the part of [Dennis]."

## GEORGE'S ASSIGNMENT OF ERROR I

{¶ 5} "The trial court failed to apply *State ex rel. Pizza v. Rezcallah* (1998), 84 Ohio [St.3d] 116 [702 N.E.2d 81], the Ohio Supreme Court's controlling case which resulted in a decision that violates [George's] constitutional rights[.]"

{¶ 6} In their first assignment of error, Smith challenges the adequacy of the evidence presented at trial. Specifically, Smith avers that the trial court's decision was contrary to the manifest weight of the evidence because appellees failed to prove that (1) Dennis had knowledge of the alleged illegal drug activity; (2) chronic felony drug trafficking occurred on the premises; and (3) the bar had a reputation for illegal drug activity. In their eighth assignment of error, Smith asserts that appellees failed to establish that Dennis knew of or acquiesced in the alleged drug activity and, therefore, the trial court erred in closing the bar. In their first assignment of error, George asserts that the trial court erroneously ordered the bar closed as against them because it failed to apply *State ex rel. Pizza v. Rezcallah*. Particularly, George posits that the trial court could close the bar only if they had acquiesced in or participated in the creation or perpetuation of the nuisance, and since the evidence suggests otherwise, the trial court violated their constitutional rights when it closed the bar. We disagree with the assertions of Smith and George.

{¶ 7} When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. *Frederick v. Born* (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14, 1996 WL 471219. In determining whether a criminal conviction is against the manifest weight of the evidence:

{¶ 8} " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [jury/trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judg-

ment/conviction] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment/conviction].' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717; see, also, *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 9} Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.

{¶ 10} In the present case, appellees asserted that the bar constituted a nuisance pursuant to R.C. Chapter 3767, R.C. 3719.10, 715.44, and 715.49. Therefore, we must examine the relevant statutory provisions to determine whether the bar did constitute a nuisance. We begin our review with the definition of "nuisance."

{¶ 11} R.C. 3767.01(C) and 3719.10 define "nuisance." In particular, R.C. 3767.01(C) provides that a "nuisance" means any of the following:

{¶ 12} "* * *

{¶ 13} "(2) Any place in or upon which lewdness, assignation, or prostitution is conducted, permitted, continued, or exists * * *[.]

{¶ 14} "(3) Any room, * * * building, * * * structure, or place where beer or intoxicating liquor is * * * sold, bartered, possessed, or kept in violation of law * * * where the operation of that place substantially interferes with public decency, sobriety, peace, and good order. 'Violation of law' includes, but is not limited to, * * * any violation of [R.C.] 2913.46 or 2925.03."

{¶ 15} R.C. 3719.10 defines "nuisance" as follows:

{¶ 16} "Premises or real estate, including vacant land, on which a felony violation of [R.C.] Chapter 2925. or 3719. * * * occurs constitute a nuisance subject to abatement pursuant to [R.C.] 3767."

{¶ 17} R.C. 3767.02(A) prescribes who is liable for a nuisance. The statute states:

{¶ 18} "Any person, who uses, occupies, establishes, or conducts a nuisance, or aids or abets in the use, occupancy, establishment, or conduct of a nuisance; the owner, agent, or lessee of an interest in any such nuisance; any person who is employed in that nuisance by that owner, agent, or lessee; and any person who is in control of that nuisance is guilty of maintaining a nuisance[.]"

{¶ 19} In order to obtain an abatement order pursuant to R.C. 3719.10 and 3767.02 et seq., the plaintiff must establish by clear and convincing evidence that chronic felony violations of R.C. Chapter 2925 or R.C. Chapter 3719 occurred on the premises. *State ex rel. Freeman v. Pierce* (1991), 61 Ohio App.3d 663, 670, 573 N.E.2d 747; *State ex rel. Miller v. Anthony* (1995), 72 Ohio St.3d 132, 135, 647 N.E.2d 1368. Evidence of felony drug activity is one type of chronic activity sufficient to establish a nuisance; however, the plaintiff need not show chronic drug activity as long as he has presented evidence of habitual actions constituting violations of R.C. Chapter 2925 or R.C. Chapter 3719. See *State ex rel. Stern v. Butler* (Sept. 26, 2001), 7th Dist. No. 98–JE–54, 2001 WL 1155821. Moreover, "R.C. 3719.10 requires only a *de facto* 'violation' of criminal law, not a *de jure* 'conviction.' " *State ex rel. Freeman*, 61 Ohio App.3d at 667, 573 N.E.2d 747. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.' " *State v. Eppinger* (2001), 91 Ohio St.3d 158, 164, 743 N.E.2d 881, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118.

{¶ 20} Additionally, the plaintiff must " 'prove by clear and convincing evidence that the defendant had knowledge of and either acquiesced to or participated in a felony violation of R.C. Chapter 2925 or 3719 on the property' " that created or perpetuated the nuisance. *State ex rel. Miller*, 72 Ohio St.3d at 139, 647 N.E.2d 1368, quoting *State ex rel. Freeman*, 61 Ohio App.3d at 671, 573 N.E.2d 747. See, also, *State v. Ramey* (Sept. 3, 1999), 2nd Dist. No. 99CA0002, 1999 WL 957650, citing *State ex rel. Pizza*, 84 Ohio St.3d 116, 702 N.E.2d 81, at paragraph two of the syllabus. "A person has knowledge of circumstances when he is aware that such circumstances *probably* exist." (Emphasis added.) R.C. 2901.22(B).

{¶ 21} The plaintiff may present "*evidence of the general reputation of the place* where the nuisance is alleged to exist" to "pro[ve] the existence of the nuisance," and it is "*prima-facie evidence of the nuisance and of knowledge of and of acquiescence and participation in the nuisance on the part of the person charged with maintaining it.*" (Emphasis added.) R.C. 3767.05(A). See, also, R.C. 3767.06(B) ("Every defendant in the action shall be presumed to have had knowledge of the general reputation of the place where the nuisance is found to exist"). We note that the civil offense of maintaining a nuisance does not require proof that the owner of the property acquiesced in or participated in the creation of the nuisance; however, the trial court cannot issue an injunction closing the property, in accordance with R.C. 3767.06(A), unless it finds that the owner acquiesced in or participated in the creation or perpetuation of the nuisance.

*State ex rel. Pizza,* 84 Ohio St.3d 116, 702 N.E.2d 81, at paragraph two of the syllabus.

{¶ 22}   In addition to obtaining an abatement order pursuant to R.C. 3719.10 and 3767.02 et seq., the plaintiff can also employ R.C. 715.44 and 715.49.   R.C. 715.44 provides:

{¶ 23}   "A municipal corporation may:

{¶ 24}   "(A) Abate any nuisance and prosecute in any court of competent jurisdiction, any person who creates, continues, contributes to, or suffers such nuisance to exist[.]"

{¶ 25}   Further, R.C. 715.49(A) states that "[a]ny municipal corporation may prevent riot, gambling, noise and disturbance, and indecent and disorderly conduct or assemblages, preserve the peace and good order, and protect the property of the municipal corporation and its inhabitants."

{¶ 26}   The evidence in the instant case reveals that Daniel Horrigan serves as an Akron city councilman and the bar is located in his ward.   Horrigan testified that he received calls from residents and business owners regarding fights and trash around the bar and the parking lot.   He further testified that he has been to the bar and observed trash and crack bags around the building and vomit and urine stains on the building.   Horrigan asserted that the bar does not have a good reputation.   Specifically, he stated that the bar has a reputation for drug dealing, prostitution, trash, rowdiness, and fights.

{¶ 27}   Sergeant Oscar Morris testified that he received complaints from a surrounding business owner that the bar's patrons were parking their cars in his private parking lot and also discarding bottles, condoms, and drug paraphernalia in the parking lot.   Sergeant Morris stated that he approached Dennis concerning the complaints and Dennis responded that "once the problem left his front door, it wasn't his problem; that that was the City's problem."   He further explained that he has seen condoms, beer bottles, cocaine spoons, and plastic baggies around the bar.   Sergeant Morris testified that the bar has a reputation for drugs and prostitution.   However, Sergeant Morris acknowledged that he was not aware of any arrests for prostitution at the bar.   He said that he called Joseph George[1] ("Joseph") to inform him about the problems at the bar, namely, the drugs and the prostitution, and he sent Joseph a copy of the paperwork.   Sergeant Morris relayed that although Joseph asserted that he was willing to

---

1.   Joseph is the son of Anthony and Josephine George.   As his father is deceased and his mother is aging, Joseph handles the finances of the George Family Trust, and maintains and supervises those properties owned by the George Family Trust, including the bar.   Dennis leases the bar's premises from the George Family Trust; however, Dennis does own the bar's parking lot.

work with the police, he did not take any action regarding Dennis's lease or the property.

{¶ 28} Paul Perge owns a business, which is located across the street from the bar. He stated that the bar has gone "downhill" over the last year or two. In particular, Perge testified that it appears as though drug users and drug dealers have taken over the bar. Also, he asserted that he witnessed fights inside the bar. He further testified that he frequently found broken bottles and used condoms. Perge noted that the bar's customers urinate anywhere in the neighborhood, including the doorway to his store and behind dumpsters. Perge explained that he had to wash his doorway to eliminate the offensive odor. He said that the bar had a reputation for drug abuse and prostitution. Perge testified that Dennis made a comment to him regarding cocaine use in the bar, specifically, "There is a blizzard in here tonight."

{¶ 29} Mark Allen testified that he has seen individuals fighting in front of the bar. Some of the fights consisted of individuals "whacking" and hitting others with clubs, sticks, and bats. He further stated that he saw approximately five people "chucking" beer bottles across the street and noted that Dennis was present during this spectacle. Allen asserted that he had seen individuals selling drugs in the parking lot.

{¶ 30} Officer Adam Wahl testified that he bought one-half gram of cocaine from Houston Jones in the bar. He further testified that Jones was later arrested in the bar for trafficking in cocaine and cocaine was found on his person and marijuana was found in his car. Officer Wahl admitted that he did not know if Dennis knew of the drug trafficking.

{¶ 31} Joseph testified that he learned of the problems surrounding the bar from Sergeant Morris. He stated that he spoke with Dennis regarding the alleged problems and Dennis maintained that the allegations were unfounded and he had not received a citation. Joseph acknowledged that he had seen trash and bottles around the dumpster in the parking lot, but said Dennis would pick up the trash and bottles.

{¶ 32} Robert Mittiga is the principal of Harris Elementary School, which is located in the vicinity of the bar. His main concern with respect to the bar was the litter, specifically, the broken glass and the condoms. Mittiga declared that since the bar has been closed, he has noticed that the litter problem has improved.

{¶ 33} Detective David Ferrell testified that he works as the K–9 handler for the narcotics unit. He further testified that he walked a dog through the bar to investigate for drugs. Detective Ferrell asserted that his investigation revealed five grams of marijuana and a marijuana pipe located in a bedroom in the

basement of the bar.  Detective Ferrell did concede that five grams of marijuana is only a minor misdemeanor.

{¶ 34}  Judie Reed testified that she worked at the bar as a bartender for approximately 17 years.  She stated that she was aware of drug activity at the bar.  Specifically, Reed explained that she saw individuals using drugs in the bar and she was aware that Jones sold drugs in the bar.  She asserted that she complained to Dennis about the drugs;  however, he responded that "[i]t wasn't his problem.  He didn't do it, it wasn't his problem."  Reed also testified that Dennis had frequently made the "blizzard" comment in reference to a lot of cocaine use in the bar.

{¶ 35}  Aaron Bonner stated that he worked at the bar as a bouncer.  He testified that he saw illegal drugs on the premises while at work.  Bonner identified the drugs that he saw:  cocaine, marijuana, and pills.  He further admitted that he did supply some of the drugs in the bar, but there were approximately four other individuals who additionally supplied the drugs.  Bonner also stated that he "sniffed" cocaine in the bar and the dancers would use cocaine in their dressing room.  He relayed the following comments made by Dennis:  (1) "I see it is a white night";  (2) "It is snowing";  and (3) "I guess it is one of those white nights tonight."  Bonner also testified concerning the activities performed at the bar, namely, lap dances.  He explained that it was common for men, including Dennis, to get lap dances while at the bar.  Bonner described the lap dances and stated that a man receiving a lap dance would sit in a chair or booth and a dancer would turn her back to the man, straddle the man's legs, and grind her hips or her pelvis in a sexual manner, thereby allowing her buttocks and thighs to touch the customer.  He also said he witnessed a dancer squeeze a customer's genitals during the dance.  Bonner further stated that at times the friction "would be so much" that the man would ejaculate.

{¶ 36}  Angela Lammelein testified that she lives in a house adjacent to the bar and the parking lot.  She stated that she has found drug paraphernalia, bottles, condom wrappers, and used condoms in her yard.  Lammelein also stated that she has observed "sex[ ] acts" and prostitution in the parking lot.

{¶ 37}  Tracie Gard testified that she worked at the bar as a waitress.  She acknowledged that she would use drugs in the bar.  Gard also testified that the dancers would use drugs in their dressing room.  She stated that she acted as an informant for the police and purchased drugs from Jones.  Gard asserted that she never told Dennis about the drug dealing in the bar and never saw anyone using drugs in the presence of Dennis.

{¶ 38}  James Paolucci worked as a cook at the bar.  He testified that although he was a cook, he was also required to clean the parking lot to ensure

that it was "straight." He further testified that he never saw anyone using or buying drugs in the bar.

{¶ 39} Officer Adam LeMonier testified that he received at least four calls each week regarding the bar or the parking lot. These calls involved prostitution, fights with weapons, drugs, and automobile thefts. Officer LeMonier stated that he has arrested an individual for prostitution in the parking lot, but has never arrested anyone for prostitution in the bar.

{¶ 40} Davette Twigg testified that she worked at the bar. She further testified that she had heard about drugs in the bar, but never saw anyone using or selling drugs in the bar. Twigg stated that Dennis and William Strellar ("Strellar"), the bar's manager, did not tolerate drug use. She stated that Strellar had checked the dancers' bags, but he did not find any drugs.

{¶ 41} Dennis testified that he did not observe drug trafficking in the bar and does not recall making comments regarding "a snowy night." Nevertheless, he stated that if he caught a customer or an employee using drugs in the bar he would ask him to leave the premises. Likewise, Dennis asserted that if he suspected that an individual was soliciting prostitution, he would escort the individual out of the bar. He further acknowledged finding an unused condom on the bar's premises and seeing vomit outside the bar's premises.

{¶ 42} Strellar testified that he never saw anyone soliciting prostitution in the bar. He further stated that if he suspected that a woman might try to solicit prostitution in the bar, he would ban the woman from the bar. Strellar admitted that he saw dancers use drugs in the bar and he has participated in drug use with the dancers. He noted that he never saw Dennis in the presence of someone using drugs. Strellar testified that he helped clean the parking lot and has never seen a condom outside of the bar. However, he did admit that he has seen vomit on the sidewalk and the buildings. Strellar acknowledged that dancers at the bar performed lap dances for customers. While the dancers performed lap dances, Strellar stated that it was common for a dancer's buttocks and breasts to be exposed to the customers. He further explained that lap dances included contact between the customer and the dancer; for example, the dancer would "put her hand between the guy's legs and go back up" and the customer would touch the dancer's buttocks and breasts. Additionally, Strellar asserted that the dancers would simulate sexual acts, such as oral sex and fornication.

{¶ 43} In the case sub judice, the judge had the opportunity to observe the witnesses' testimony and weigh the credibility of the testimony; therefore, we must give deference to the judge's decision. *Berger v. Dare* (1994), 99 Ohio App.3d 103, 106, 649 N.E.2d 1316. Upon careful review of the testimony and evidence presented at trial, we hold that the judge did not act contrary to the manifest weight of the evidence in finding that the bar constituted a nuisance and,

therefore, issuing a permanent injunction to abate the nuisance. Further, the testimony reveals that appellees did establish that Dennis knew of or acquiesced in the alleged drug activity and that George acquiesced in or participated in the creation or perpetuation of the nuisance. Accordingly, Smith's first and eighth assignments of error and George's first assignment of error are overruled.

## SMITH'S ASSIGNMENT OF ERROR II

{¶ 44} "The trial court erred by permitting inadmissible hearsay testimony[.]"

{¶ 45} In their second assignment of error, Smith alleges that the trial court erroneously permitted appellees to introduce inadmissible hearsay testimony, specifically, Smith's allegation revolves around the testimony of Horrigan, Sergeant Morris, and Perge regarding the reputation of the bar. Smith's allegation is without merit.

{¶ 46} A trial court has broad discretion to admit or exclude evidence. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. Therefore, absent an abuse of discretion, an appellate court will not disturb a decision of a trial court. Id. at 182, 31 OBR 375, 510 N.E.2d 343. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.

{¶ 47} As previously stated, in a nuisance action, the plaintiff must establish that the party enjoined knew of, and participated in or acquiesced in the activities constituting the nuisance. *State ex rel. Freeman*, 61 Ohio App.3d at 670–671, 573 N.E.2d 747. The plaintiff may establish this through direct evidence or by the general reputation of the place where the nuisance is alleged to exist. *State ex rel. Montgomery v. Pakrats Motorcycle Club, Inc.* (1997), 118 Ohio App.3d 458, 465, 693 N.E.2d 310, citing *State ex rel. Pizza v. Carter* (1993), 63 Ohio Misc.2d 235, 240, 622 N.E.2d 1194. See, also, R.C. 3767.05(A) (providing that plaintiff may use "evidence of the general reputation of the place where the nuisance is alleged to exist" to "pro[ve] the existence of the nuisance" and that it is also "prima-facie evidence of the nuisance and of knowledge of and of acquiescence and participation in the nuisance on the part of the person charged with maintaining it").

{¶ 48} A party challenging the admission of evidence must timely object and state the specific grounds for the objection in order to preserve the error for appeal. Evid.R. 103(A)(1). Failure to timely object waives the opportunity for appellate review of any issue not preserved. *State v. Self* (1990), 56 Ohio St.3d

73, 81, 564 N.E.2d 446; *State v. Heilman* (Sept. 21, 1994), 9th Dist. No. 2312–M, at 3, 1994 WL 510803. We note that Smith has challenged the testimony of Sergeant Morris and Perge; however, they failed to assert an objection. Therefore, our review is limited to those statements to which Smith objected at trial.

{¶ 49}  Upon a review of the record, we find that the testimony elicited from Horrigan concerned the reputation of the bar where the nuisance allegedly existed and that testimony is admissible in a nuisance action. See *State ex rel. Montgomery*, 118 Ohio App.3d at 465, 693 N.E.2d 310; R.C. 3767.05(A). Consequently, we cannot say that the trial court abused its discretion in admitting Horrigan's testimony. Accordingly, Smith's second assignment of error is overruled.

### SMITH'S ASSIGNMENT OF ERROR III

{¶ 50}  "The trial court erred by separating the claims presented by the complaint and the counterclaim[.]"

{¶ 51}  In their third assignment of error, Smith contends that the trial court abused its discretion by separating the claims presented by the complaint, counterclaim, cross-claim, and third-party complaint. Additionally, Smith contends that the trial court erroneously separated the claims without conducting a hearing as mandated by Civ.R. 42(B). Smith's contentions are without merit.

{¶ 52}  Civ.R. 42(B) provides:

{¶ 53}  "The court, after a hearing, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, or third-party claims, or issues, always preserving inviolate the right to trial by jury."

{¶ 54}  The decision whether to bifurcate a trial rests within the sole discretion of the trial court. *Sheets v. Norfolk S. Corp.* (1996), 109 Ohio App.3d 278, 288, 671 N.E.2d 1364, citing *Heidbreder v. Trustees* (1979), 64 Ohio App.2d 95, 100, 18 O.O.3d 78, 411 N.E.2d 825. See, also, *Webb v. Smith* (Nov. 18, 1998), 9th Dist. No. 18859, at 13, 1998 WL 801944. Accordingly, an appellate court will not interfere with a trial court's decision to bifurcate a trial pursuant to Civ.R. 42(B), unless the trial court has abused its discretion. *Sheets*, 109 Ohio App.3d at 288, 671 N.E.2d 1364.

{¶ 55}  In the present case, there were a varied assortment of asserted claims. Specifically, the claims asserted by the parties are as follows: appellees sought to abate a nuisance; Smith alleged breach of contract, tortious interference with contract, civil conspiracy, civil RICO violations, Section 1983 violations, defama-

tion, fraud, intentional infliction of emotional distress, and respondeat superior; and George alleged forcible entry and detainer and breach of contract. Due to the nature of the claims presented in the complaint, cross-claim, counterclaim and third-party complaint, we find that trial court's decision to separate the trials will be conducive to expedition and economy of the claims. See Civ.R. 42(B). Additionally, although we find that Smith contends that his civil conspiracy claim is a defense to the nuisance action and, accordingly, he should have been able to assert this claim at trial, the record indicates that Smith was permitted to introduce this evidence at trial. Therefore, we conclude that the trial court did not abuse its discretion by separating the claims presented in the complaint, cross-claim, counterclaim, and third-party complaint.

{¶ 56} We now turn to Smith's contention that the trial court failed to conduct a hearing on the motion to separate the trials pursuant to Civ.R. 42(B). Civ.R. 42(B) permits a court, *after a hearing*, to order a separate trial of any claim. Civ.R. 42(B) requires a hearing. See *Voinovich v. Ferguson* (1992), 63 Ohio St.3d 198, 211, 586 N.E.2d 1020 (Douglas, J., concurring). As far as we can determine from the record, the trial court did ignore this requirement. However, we cannot say that separation without a hearing rises to the level of "plain error" in this case. Specifically, Smith filed a substantial motion in opposition to appellees' motion to separate the trial. Finally, the record indicates that Smith at no time objected to this arrangement. Consequently, Smith's third assignment of error is overruled.

## SMITH'S ASSIGNMENT OF ERROR IV

{¶ 57} "The trial court erred by permitting evidence which was not disclosed in accordance with the Ohio Rules of Civil Procedure and in contravention of * * * Smith's due process rights[.]"

{¶ 58} In their fourth assignment of error, Smith argues that the trial court erred by admitting Detective Ferrell's testimony regarding evidence obtained during an inspection of the bar's premises because it was not disclosed in accordance with the Ohio Rules of Civil Procedure. In particular, Smith argues that appellees failed to provide Smith with a request to inspect the bar prior to conducting an inspection of the premises, thereby violating Civ.R. 34. Furthermore, Smith argues that appellees withheld photographs taken of the interior of the bar's premises in violation of the trial court's order, which required appellees to provide Smith with these photographs. This assignment of error is not well taken.

{¶ 59} Civ.R. 34(A) states:

{¶ 60} "[A]ny party may serve on any other party a request to produce and permit the party making the request, or someone acting on the requesting party's behalf, * * * to enter upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation on the property."

{¶ 61} Although a review of the record appears to indicate that appellees did not request to inspect the bar's premises, and during their inspection they obtained five grams of marijuana and drug paraphernalia, it is within the trial court's discretion to exclude such evidence. See *Shaver v. Std. Oil Co.* (1990), 68 Ohio App.3d 783, 799, 589 N.E.2d 1348. "The exclusion of reliable and probative evidence * * * should be invoked only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise." *Nickey v. Brown* (1982), 7 Ohio App.3d 32, 34, 7 OBR 34, 454 N.E.2d 177.

{¶ 62} In this case, the record fails to indicate that the testimony of Detective Ferrell would have been so surprising to Smith as to warrant the exclusion. Of import is the fact that appellees informed Smith that "[Detective] Ferrell * * * would be a witness * * * [a]nd * * * would be testifying as to [the] presence of drugs on the premises" in their response to Smith's request for discovery. Further, there is nothing in the record to indicate appellees' discovery violation was the result of willful noncompliance. Under these circumstances, we cannot conclude that the trial court abused its discretion by failing to exclude Detective Ferrell's testimony regarding evidence obtained during an inspection of the bar's premises.

{¶ 63} In regard to Smith's argument that appellees withheld photographs contrary to an order of the trial court, this court notes that the record does not contain the trial court's order from which Smith asserts appellees' violation stems. App.R. 9 places an affirmative duty on Smith to provide this court with an adequate record. "A presumption of validity attends the trial court's action. In the absence of an adequate record, * * * we are unable to evaluate the merits of the assignments of error and must affirm the trial court's decision." *Volodkevich v. Volodkevich* (1989), 48 Ohio App.3d 313, 314, 549 N.E.2d 1237. See, also, *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384. As a result of Smith's failure to provide the order from the trial court, Smith has not demonstrated the error assigned. Smith's fourth assignment of error is overruled.

### SMITH'S ASSIGNMENT OF ERROR V

{¶ 64} "The trial court erred by permitting Appellees to present evidence and make legal arguments not plead in the complaint[.]"

{¶ 65} In their fifth assignment of error, Smith argues that appellees did not aver in their complaint that acts of lewdness or prostitution were a source of nuisance; therefore, the trial court erred by permitting appellees to present this evidence and make legal arguments based upon these grounds, as this evidence was outside of the pleadings. Smith's arguments are meritless.

{¶ 66} Civ.R. 15(B) provides:

{¶ 67} "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.  * * *"

{¶ 68} This rule conveys a liberal policy toward allowing amendments where such allowance is not sought in bad faith and does not cause undue delay or prejudice to the opposing party. *Hall v. Bunn* (1984), 11 Ohio St.3d 118, 121, 11 OBR 417, 464 N.E.2d 516. See, also, *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 5, 12 OBR 1, 465 N.E.2d 377. "The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies. Civ.R. 1(B) requires that the Civil Rules shall be applied 'to effect just results.' Pleadings are simply an end to that objective." *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 297 N.E.2d 113.

{¶ 69} Civ.R. 15(B) outlines two types of amendments. The first type of amendment concerns situations when the parties have expressly or impliedly consented to the trial of issues not contained in the pleadings. Civ.R. 15(B). See, also, *Hall*, 11 Ohio St.3d at 121, 11 OBR 417, 464 N.E.2d 516. The second type of amendment arises where a party enters an objection to the evidence offered on the basis that it is outside of the pleadings. Civ.R. 15(B). See, also, *Hall*, 11 Ohio St.3d at 121, 11 OBR 417, 464 N.E.2d 516. It is this portion of the rule that is at issue in the instant case.

{¶ 70} When there is an objection to evidence offered because it is outside of the pleadings, the trial court shall allow amendment if the following criteria exist: (1) "the presentation of the case's merits will be subserved thereby" and (2) "the objecting party does not satisfy the court that admission of

the evidence would prejudice him in maintaining his case upon the merits." *Hall,* 11 Ohio St.3d at 121, 11 OBR 417, 464 N.E.2d 516. The objecting party must establish that he will be subjected to a serious disadvantage in presenting his case, and this requires more than a showing of just mere surprise. Id. at 122, 11 OBR 417, 464 N.E.2d 516.

{¶ 71} The trial court has broad discretion to freely allow amendments pursuant to Civ.R. 15(B). *Spisak v. McDole* (1984), 15 Ohio St.3d 62, 63, 15 OBR 157, 472 N.E.2d 347. Therefore, this court will not disturb the trial court's decision absent an abuse of discretion. Id.

{¶ 72} In this case, Smith failed to satisfy the trial court that the admission of evidence regarding the acts of lewdness and prostitution would prejudice them in maintaining their case. See *Hall,* 11 Ohio St.3d at 121, 11 OBR 417, 464 N.E.2d 516. Specifically, the record reveals that although Smith did object to the admission of this evidence below, they failed to establish how they were "seriously disadvantaged" by the admission of the evidence. Consequently, we find that the trial court did not abuse its discretion and, accordingly, overrule Smith's fifth assignment of error.

## SMITH'S ASSIGNMENT OF ERROR VI

{¶ 73} "The trial court erred by determining that lap dancing constitutes illegal prostitution[.]"

{¶ 74} In their sixth assignment of error, Smith alleges that lap dancing is constitutionally protected speech inasmuch as it is expressive conduct and, therefore, the trial court erroneously determined that it constitutes illegal prostitution. We disagree.

{¶ 75} Initially, we note that the trial court did not determine that lap dancing was illegal prostitution, but rather illegal sexual activity, as it included acts of lewdness and sexual contact. Nevertheless, our review focuses on whether lap dancing falls within the constitutional parameters that protect speech.

{¶ 76} The First Amendment of the United States Constitution states: "Congress shall make no law * * * abridging the freedom of speech[.]" The Fourteenth Amendment of the United States Constitution makes this freedom of speech provision applicable to the states. *Ladue v. Gilleo* (1994), 512 U.S. 43, 45, 114 S.Ct. 2038, 129 L.Ed.2d 36, fn. 1.

{¶ 77} In this case, the conduct involved was lap dancing. There was evidence that during these dances, the dancers would rub parts of their bodies, including genital areas, thighs, and buttocks, against the customers' genital areas, thereby simulating sexual activity. Evidence further revealed that the dancers

exposed their buttocks and breasts to the customers. Although "nude dancing[ ] is afforded some constitutional protection[,]" "such actions as simulating sex and pummeling a customer with one's breasts are not afforded the same degree of protection as political discourse or classic literature[.]" *Junction 615, Inc. v. Ohio Liquor Control Comm.* (1999), 135 Ohio App.3d 33, 39, 732 N.E.2d 1025, citing *Schad v. Mt. Ephraim* (1981), 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671; *Barnes v. Glen Theatre, Inc.* (1991), 501 U.S. 560, 565, 111 S.Ct. 2456, 115 L.Ed.2d 504. Moreover, unlike nude dancing, which may receive some constitutional protection, the courts have failed to include lap dancing under this umbrella of protection. See *State ex rel. Miller v. Private Dancer* (1992), 83 Ohio App.3d 27, 31–32, 613 N.E.2d 1066, citing *Dallas v. Stanglin* (1989), 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (declining to extend First Amendment protection to lap dancing under the guise of expressive conduct). See, also, *Hoskins v. Dept. of Business Regulation, Div. of Alcoholic Beverages & Tobacco* (Fla.App.1992), 592 So.2d 1145, 1146 (finding that lap dancing was not conduct that was a protected form of speech). Accordingly, lap dancing is not a constitutionally protected form of speech, and we overrule Smith's sixth assignment of error.

## SMITH'S ASSIGNMENT OF ERROR VII

{¶ 78} "The trial court erred by enjoining the use of the parking lot where such relief was not sought and no notice was afforded to [Smith] that use of the parking lot would be enjoined[.]"

{¶ 79} In their seventh assignment of error, Smith contends that the trial court erroneously enjoined the use of the parking lot. Smith urges that this is an expansion of appellees' requested relief and, therefore, the trial court may not enter a judgment which exceed the relief sought in the complaint. Smith's contention is not well taken.

{¶ 80} Civ.R. 54(C) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings." Therefore, the trial court may render whatever judgment is equitable considering the issues raised in the pleadings or at trial. *State ex rel. Blackwell v. Bachrach* (1957), 166 Ohio St. 301, 303, 2 O.O.2d 219, 143 N.E.2d 127.

{¶ 81} Appellees' prayer for relief includes the language "[appellees] further ask for all else to which they are entitled in equity or at law." This language has been held to permit the court to shape its judgment according to the equity of the case and grant the relief warranted. Id. Furthermore, the utility of the phrase was noted by the Ohio Supreme Court, in *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 26, 71 O.O.2d 12, 325 N.E.2d 544, in its discussion of Civ.R. 54(C).

In particular, the court stated, "Under Civ.R. 54(C), the facts determine the relief to be granted in a particular case * * *. The new rule makes it unnecessary to add the phrase, 'and such further relief as plaintiff may be entitled to in law and equity' to gain such additional relief." Thus, "[t]he legal efficacy of [that] language * * * is * * * consistent with the import of Civ.R. 54(C)[,]" namely, that cases are " 'tried on the proofs rather than the pleadings.' " *State ex rel. Hottle v. Bd. of Cty. Commrs.* (1977), 52 Ohio St.2d 117, 122, 6 O.O.3d 337, 370 N.E.2d 462, quoting *De Loach v. Crowley's, Inc.* (C.A.5, 1942), 128 F.2d 378, 380. Notwithstanding the language appellees included in their prayer for relief, the trial court was free to render the relief it deemed appellees were entitled to. See Civ.R. 54(C).

{¶ 82}  Based upon the evidence presented at trial, the trial court found that the parking lot constituted a nuisance and, accordingly, permanently enjoined the use of the parking lot. After a thorough review of the evidence, we find that the trial court acted properly and within its power to grant such relief. See Civ.R. 54(C). Smith's seventh assignment of error is overruled.

## SMITH'S ASSIGNMENT OF ERROR IX

{¶ 83}  "The trial court erred by not granting * * * [Smith's] motion for involuntary dismissal[.]"

{¶ 84}  In their ninth assignment of error, Smith avers that the trial court erred by not granting its motion for involuntary dismissal pursuant to Civ.R. 41(B)(2). We disagree.

{¶ 85}  In ruling on a motion for involuntary dismissal pursuant to Civ.R. 41(B)(2), the trial court weighs the evidence, resolves any conflicts therein, and may render judgment in favor of the defendant if the plaintiff has shown no right to relief. *Ramco Specialties, Inc. v. Pansegrau* (1998), 134 Ohio App.3d 513, 520, 731 N.E.2d 714. "Where plaintiff's evidence is insufficient to sustain plaintiff's burden in the matter, the trial court *may* dismiss the case." (Emphasis sic.) *In re Estate of Fugate* (1993), 86 Ohio App.3d 293, 297, 620 N.E.2d 966. A reviewing court will not disturb a trial court's ruling regarding a motion for involuntary dismissal pursuant to Civ.R. 41(B)(2) unless the trial court's ruling is incorrect as a matter of law or is against the manifest weight of the evidence. *Johnson v. Tansky Sawmill Toyota, Inc.* (1994), 95 Ohio App.3d 164, 167, 642 N.E.2d 9.

{¶ 86}  In this case, Smith moved the trial court for an involuntary dismissal at the conclusion of the trial. Therefore, we will review all of the evidence presented at trial. In light of our disposition in assignment of error one, we find that the trial court's ruling denying Smith's motion was not against the manifest weight of the evidence. Likewise, we cannot say that the trial court's ruling was

incorrect as a matter of law. Therefore, we conclude that the trial court did not err in denying Smith's motion. Smith's ninth assignment of error is overruled.

## SMITH'S ASSIGNMENT OF ERROR X

{¶ 87}   "The trial court erred by allowing evidence of convictions outside the statute of limitations for the purposes of imputing knowledge or acquiescence to Dennis[.]"

## GEORGE'S ASSIGNMENT OF ERROR IV

{¶ 88}   "The trial court erred in refusing to hear [George's] [c]rossclaim for [f]orcible [e]ntry and [d]etainer and [b]reach of [c]ontract at trial and render a judgment on the merits of the [c]rossclaim[.]"

{¶ 89}   In their tenth assignment of error, Smith asserts that the trial court erroneously permitted evidence, which they contend was outside the prescribed statute of limitations for a nuisance action, to impute knowledge of or acquiescence in drug activity to Dennis. In their fourth assignment of error, George alleges that the trial court erred when it refused to hear George's crossclaim at trial. Both assignments of error lack merit.

{¶ 90}   This court notes that Smith has failed to assert how the trial court's action constituted an error, as they have failed to cite any applicable case law on this issue. See *In re Spence* (Mar. 28, 2001), 9th Dist. No. 99CA007522, at 12, 2001 WL 298236 (declining to address the appellant's assignment of error because he failed to cite law applicable). Likewise, George has failed to set forth a single, legal authority to support their contentions that the trial court erred. Therefore, Smith and George have failed to provide citations to authorities supporting their assignment of error and the standard of review applicable to their assignment of error as required by App.R. 16(A)(7) and Loc.R. 7(A)(6). Smith and George had the burden of affirmatively demonstrating error on appeal. See *Angle v. W. Res. Mut. Ins. Co.* (Sept. 16, 1998), 9th Dist. No. 2729-M, at 2, 1998 WL 646548; *Frecska v. Frecska* (Oct. 1, 1997), 9th Dist. No. 96CA0086, at 4, 1997 WL 625488. Moreover, "[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out." *Cardone v. Cardone* (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at 18, 1998 WL 224934. Accordingly, since Smith and George have failed to set forth any legal error by the trial court in their respective assignments of error, this court has no choice but to disregard them. Accordingly, Smith's tenth assignment of error and George's fourth assignment of error are overruled.

## SMITH'S ASSIGNMENT OF ERROR XI

{¶ 91} "The trial court erred by ordering a closure of the [bar] for a period in excess of one year[.]"

## GEORGE'S ASSIGNMENT OF ERROR III

{¶ 92} "The trial court erroneously calculated the commencement date for the one-year closure order[.]"

{¶ 93} In these assignments of error, both Smith and George contend that the trial court erroneously calculated the commencement date of the closure order. Specifically, the trial court ordered that the closing was to extend for one year from the date of its determination on the permanent injunction. As the bar was already closed due to the temporary injunction, the effect of this order was that the bar was closed in excess of one year, which Smith and George contend is in violation of R.C. Chapter 3767. We disagree with this contention.

{¶ 94} When reviewing whether a trial court correctly interpreted and applied a statute, an appellate court employs the de novo standard. See *Akron v. Frazier* (2001), 142 Ohio App.3d 718, 721, 756 N.E.2d 1258, citing *State v. Sufronko* (1995), 105 Ohio App.3d 504, 506, 664 N.E.2d 596. Thus, an appellate court does not give deference to the trial court's determination. *Frazier*, 142 Ohio App.3d at 721, 756 N.E.2d 1258. See, also, *Tamarkin Co. v. Wheeler* (1992), 81 Ohio App.3d 232, 234, 610 N.E.2d 1042.

{¶ 95} R.C. 3767.04 discusses the standard required to obtain a temporary injunction in a nuisance action, and the length of a closure order stemming from the injunction. Particularly, "[i]f * * * the allegations of the complaint are sustained to the satisfaction of the court or judge, the court or judge shall issue a temporary injunction * * * restraining the defendant and any other person from continuing the nuisance." R.C. 3767.04(B)(3). Further, "if at the time of granting the temporary injunction it * * * appears that the person owning, in control, or in charge of the nuisance" has received five days' notice of the hearing and has not shown to the satisfaction of the court or judge that the nuisance has been abated or has proceeded to enforce his rights under R.C. 3767.10, "the court or judge * * * shall issue an order closing the place * * * until a final decision is rendered on the complaint for the requested permanent injunction." Id. Accordingly, a closure order arising from this statutory provision remains in effect until the trial court renders its decision on the complaint for the permanent injunction. See id.

{¶ 96} In regard to the imposition and duration of a permanent injunction to abate a nuisance, we turn to R.C. 3767.06. This statute provides that if a trial court determines that a nuisance exists, it "shall continue for one year any closing

order issued at the time of granting the temporary injunction; or, if a closing order was not then issued, * * * include an order directing the effectual closing of the place * * * against its use for any purpose and keeping it closed for a period of one year unless sooner released." R.C. 3767.06(A).

{¶ 97} In light of R.C. 3767.06(A), Smith and George contend that a closure order can only be in effect for a maximum of one year, whether or not a closure order was entered pursuant to R.C. 3767.04. Therefore, the trial court should not have imposed the one-year closure order commencing on the date it determined a nuisance existed, but rather, calculated the length of the one-year closure order from the date the temporary injunction was ordered. However, we conclude that the relevant statutory provisions do not require a trial court to calculate the one-year time period beginning from the date of the prior closure order. See *State ex rel. Miller v. Nu–Look Bookstore* (Apr. 30, 1991), 10th Dist. No. 90AP–939, 1991 WL 70131 (finding that the maximum length of a closure order is restricted to one year is a strained interpretation of R.C. 3767.06 and, accordingly, the language "continue for one year any closing order" means the premises should be closed for one year commencing on the date the final judgment is entered).

{¶ 98} In reviewing R.C. 3767.06(A), it directs the trial court to "continue for one year any closing order" previously issued. This language is unambiguous; it clearly provides that any prior closing order shall be continued for one year. Nowhere in the statute does it provide that the maximum length of a closing order, regardless of its inception, must not exceed one year. Therefore, we find that the trial court properly calculated the commencement date of the one-year closure order issued contemporaneously with the permanent injunction. Consequently, we overrule Smith's eleventh assignment of error and George's second assignment of error.

## SMITH'S ASSIGNMENT OF ERROR XII

{¶ 99} "The trial court erred by issuing a temporary injunction closing the [bar]."

## GEORGE'S ASSIGNMENT OF ERROR II

{¶ 100} "The trial court erred in issuing the injunction because it is not narrowly tailored to address only the nuisance and is therefore unconstitutionally overbroad under both the federal and state constitutions[.]"

{¶ 101} In their twelfth assignment of error, Smith argues that the trial court erred when it exceeded the statutory limitations of a temporary injunction by ordering the bar closed for any purpose. Specifically, Smith argues that the trial

court can only order a temporary injunction to prevent the prohibited activity in a nuisance action. Similarly, in their second assignment of error, George argues that the trial court should have fashioned its injunction to restrict only those activities that would advance the nuisance; therefore, the trial court erred by exceeding this boundary. We disagree with the arguments of Smith and George.

{¶ 102} We initially note that it is unclear from George's brief if they are challenging the extent of the restrictions ordered in the temporary or permanent injunction. Therefore, we will examine both the temporary and permanent injunction.

{¶ 103} The decision of the trial court to grant or deny an injunction rests solely within its discretion. *Buck Consultants, Inc. v. Smith* (Dec. 7, 2000), 8th Dist. Nos. 77845 and 78002, 2000 WL 1807220. An appellant court will not disturb that decision unless it is clear that the trial court abused its discretion. *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496.

### Temporary Injunction

{¶ 104} The statutory provision which addresses an application for a temporary injunction in a nuisance action is R.C. 3767.04. Specifically, R.C. 3767.04(B)(3) provides the framework and the extent to which a trial court may issue a temporary injunction. R.C. 3767.04(B)(3) states:

{¶ 105} "* * * If, upon hearing, the allegations of the complaint are sustained to the satisfaction of the court or judge, the court or judge shall issue a temporary injunction * * * restraining the defendant and any other person from continuing the nuisance. Except as provided in division (C) of this section, if at the time of granting the temporary injunction it further appears that the person owning, in control, or in charge of the nuisance so enjoined had received five days' notice of the hearing and unless that person shows to the satisfaction of the court or judge that the nuisance complained of is abated or that he proceeded forthwith to enforce his rights under [R.C. 3767.10], the court or judge forthwith shall issue an order closing the place against its use for any purpose of lewdness, assignation, prostitution, or other prohibited conduct until a final decision is rendered on the complaint for the requested permanent injunction."

{¶ 106} Based upon the evidence, there is no indication that the patrons visited the bar solely to socialize with friends and have a drink. Rather, the evidence indicates that the patrons frequented the bar to use and obtain illegal drugs and participate in lewd behavior. We find that sufficient evidence exists that the operation of the bar played a significant role in the prohibited and lewd conduct. Therefore, we fail to understand how an order requiring the prohibited and lewd conduct in the bar to cease yet allowing the bar to operate would effectuate the intent of the temporary injunction. See *State ex rel. Roszmann v.*

*Lions Den* (1993), 89 Ohio App.3d 775, 786, 627 N.E.2d 629 (finding that patrons did not visit adult arcade solely to use the game and vending machines and, accordingly, merely ordering the lewd conduct to cease without more would not promote the abatement of the nuisance). Thus, the closure of the bar for all purposes at the temporary injunction phase was a proper application of R.C. 3767.04(B)(3). See id. Consequently, we overrule Smith's twelfth assignment of error.

## Permanent Injunction

{¶ 107} The imposition of a permanent injunction in a nuisance action is governed by R.C. 3767.06(A). R.C. 3767.06(A) provides that "[i]f the existence of a nuisance is admitted or established in the civil action" the court shall issue "an order of abatement" and "shall continue for one year any closing order issued at the time of granting the temporary injunction[.]" As the permanent injunction is essentially a continuation of the temporary injunction, and we have already determined that the trial court properly closed the bar for all purposes when issuing the temporary injunction, we likewise conclude that the trial court properly determined the restrictions on the use of the bar to eliminate the nuisance in its entry ordering the permanent injunction. Consequently, regardless of whether George challenged the restrictions outlined in the temporary or permanent injunction, we find that the trial court did not abuse its discretion in either instance. Accordingly, George's second assignment of error is overruled.

## SMITH'S ASSIGNMENT OF ERROR XIII

{¶ 108} "The trial court erred in rendering judgment in this matter because it lacked subject matter jurisdiction[.]"

{¶ 109} In their thirteenth assignment of error, Smith avers that the trial court erroneously decided this case because it lacked subject matter jurisdiction. Furthermore, Smith alleges that appellees were required to exhaust the available administrative remedies, namely, seeking an adjudication by the Ohio Liquor Control Commission, prior to asserting a claim in the Summit County Court of Common Pleas. We disagree.

{¶ 110} Subject matter jurisdiction "connotes the power to hear and decide a case upon its merits[.]" *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 61 O.O.2d 335, 290 N.E.2d 841, paragraph one of the syllabus. See, also, *Nielsen v. Ford Motor Co.* (1996), 113 Ohio App.3d 495, 499, 681 N.E.2d 470, citing 20 American Jurisprudence 2d (1995), Courts, Section 70 (stating that subject matter jurisdiction is the power of a court to hear, decide, and render a valid, enforceable final judgment in an action). "Subject matter jurisdiction focuses on the court as

a forum and on the case as one of a class of cases, not on the particular facts of a case or the particular tribunal that hears the case." *State v. Swiger* (1998), 125 Ohio App.3d 456, 462, 708 N.E.2d 1033. Further, "[j]urisdiction does not relate to the *rights of the parties,* but to the *power of the court.*" (Emphasis sic.) *State ex rel. Tubbs Jones v. Suster* (1998), 84 Ohio St.3d 70, 75, 701 N.E.2d 1002. Absent a patent and unambiguous lack of jurisdiction, a court of common pleas can determine its own jurisdiction to hear a cause, and the party objecting to the exercise of jurisdiction has an adequate remedy at law through an appeal. *Brooks v. Gaul* (2000), 89 Ohio St.3d 202, 203, 729 N.E.2d 752; *DuBose v. Court* (1980), 64 Ohio St.2d 169, 171, 18 O.O.3d 385, 413 N.E.2d 1205. As the determination of whether a trial court has subject matter jurisdiction involves a question of law, an appellate court's review is de novo. *McClure v. McClure* (1997), 119 Ohio App.3d 76, 79, 694 N.E.2d 515; *Baker v. Terex Div., Gen. Motors Corp.* (1989), 65 Ohio App.3d 704, 709, 585 N.E.2d 441; *Burns v. Daily* (1996), 114 Ohio App.3d 693, 701, 683 N.E.2d 1164.

{¶ 111} The doctrine requiring exhaustion of administrative remedies is a well-established principle of Ohio law. *Noernberg v. Brook Park* (1980), 63 Ohio St.2d 26, 29, 17 O.O.3d 16, 406 N.E.2d 1095, citing *State ex rel. Lieux v. Westlake* (1951), 154 Ohio St. 412, 415–416, 43 O.O. 343, 96 N.E.2d 414. Specifically, the doctrine requires the party to exhaust available administrative remedies prior to seeking court action in an administrative matter. *Noernberg,* 63 Ohio St.2d at 29, 17 O.O.3d 16, 406 N.E.2d 1095, citing *Westlake,* 154 Ohio St. at 415–416, 43 O.O. 343, 96 N.E.2d 414. This requirement promotes judicial economy in the Ohio court system. See *G.S.T. v. Avon Lake* (1976), 48 Ohio St.2d 63, 65, 2 O.O.3d 217, 357 N.E.2d 38. The United States Supreme Court has stated that "[e]xhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi* (1975), 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522. See, also, *S. Ohio Coal Co. v. Donovan* (C.A.6, 1985), 774 F.2d 693, 702 (writing that the purpose of the doctrine "is to permit an administrative agency to apply its special expertise * * * and in developing a factual record without premature judicial intervention").

{¶ 112} R.C. 3767.03 provides that a city law director, in the name of the state, may bring an action to abate a nuisance. Moreover, R.C. 3767.04(A) provides that such an action "shall be commenced in the court of common pleas of the county in which the nuisance is located." These statutory provisions grant subject matter jurisdiction to a court of common pleas to consider an action for the abatement of a nuisance in the county where the common pleas court sits.

R.C. 3767.03; R.C. 3767.04. As the bar where the alleged nuisance existed is located in Summit County, we find that the Summit County Court of Common Pleas had subject matter jurisdiction over the underlying nuisance action in this case.

{¶ 113} We now turn to Smith's contention that appellees must first seek an adjudication by the Ohio Liquor Control Commission prior to filing an action for abatement of the nuisance. Smith bases their contention on the following: (1) appellees' action for abatement seeks an order that would effectively preclude the sale of alcohol at the premises and (2) pending before the Ohio Liquor Control Commission is an appeal from the denial of the bar's liquor license renewal.

{¶ 114} A "nuisance" is defined as:

{¶ 115} "Any * * * place where beer or intoxicating liquor is * * * sold, bartered, possessed, or kept in violation of law * * * where the operation of that place substantially interferes with public decency, sobriety, peace, and good order. 'Violation of law' includes * * * any violation of [R.C.] * * * 2925.03." R.C. 3767.01(C)(3).

{¶ 116} R.C. 2925.03 prohibits trafficking in drugs. In this case, the nuisance complaint alleges, among other things, that trafficking of marijuana and cocaine has occurred on the bar premises. Additionally, R.C. 3767.05(E)(2) requires the trial court to include an order precluding the sale of alcoholic beverages at the premises if a nuisance, in violation of R.C. 3767.01(C)(3), has been found to have occurred. Finally, R.C. 4301.25(A)(2) allows the Ohio Liquor Control Commission to revoke or suspend any liquor license where a judgment pursuant to R.C. 3767.05(E) has been entered relevant to the premises holding the license. Accordingly, it is evident that the statutory provisions contemplate the exercise of concurrent jurisdiction by the Summit County Court of Common Pleas over the abatement action of a nuisance and by the Ohio Liquor Control Commission over the nonrenewal of the bar's liquor license. Therefore, we hold that the trial court did have subject matter jurisdiction over the instant matter and appellees were not required to obtain an adjudication by the Ohio Liquor Control Commission prior to asserting its claim in the trial court. Smith's thirteenth assignment of error is overruled.

{¶ 117} The assignments of error presented by Smith and George are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

BAIRD, J., concurs.

CARR, J., concurs in judgment only.